[No. A039170. First Dist., Div. Five. June 24, 1988.]

EUREKA TEACHER'S ASSOCIATION et al., Plaintiffs and Appellants, v.
BOARD OF EDUCATION OF THE EUREKA CITY SCHOOLS, Defendant and Appellant.

COUNSEL

Victor T. Schaub and Stokes, Steeves & Schaub for Plaintiffs and Appellants.

Geri Anne Johnson, Richard A. Smith and Harland & Gromala for Defendant and Appellant.

Linda S. Somers and Kronick, Moskovitz, Tiedemann & Girard as Amici Curiae on behalf of Defendant and Appellant.

OPINION

KING, J.—In this case we hold that (1) a substitute teacher's illusory classification as a day-to-day substitute despite her actual service as a long-term substitute did not deprive her of reemployment rights conferred on long-term substitutes, and (2) her request for backpay and fringe benefits was incidental to her mandamus action for reemployment and thus was not subject to the Tort Claims Act.

The Board of Education of the Eureka City Schools (the Board) appeals from a judgment in favor of The Eureka Teacher's Association (the Teacher's Association) and Dian Moehnke granting a writ of mandate requiring the Board to employ Moehnke with retroactive probationary status. The Teacher's Association and Moehnke cross-appeal, challenging a portion of the judgment denying Moehnke's claim for backpay and fringe benefits. We reverse the portion of the judgment denying backpay and fringe benefits, and affirm in all other respects.

Moehnke served as a substitute and temporary teacher for the Eureka city schools during the entire 1983-1984 school year. She taught a fourth-fifth grade combination class in place of Anna McFarland, who was on maternity leave from September 9 to December 2 and took an unpaid leave of absence for the balance of the school year.

During the three-month period McFarland was on maternity leave, the schools' governing board classified Moehnke as a day-to-day substitute teacher, even though she regularly reported without special call to McFarland's class and performed McFarland's normal duties. On November 15, 1983, McFarland requested unpaid leave from December 5 through the end of the school year. As of December 5 the governing board employed Moehnke as a temporary teacher. For the rest of the school year she continued to report to McFarland's class without special call and performed McFarland's normal duties.

For the 1984-1985 school year the school district had vacant positions in which Moehnke was qualified to serve. The district did not hire her, however, because it believed other candidates were more qualified, and because it did not believe she had preferential hiring rights under Education Code section 44918.[1]

Education Code section 44918 provides that if an employee classified as a temporary or substitute "serves during one school year for at least 75

---

[1] The Board states in its opening brief, without citation to the record, that "the school filled the vacant positions with teachers who scored higher than petitioner Moehnke on the competitive examination process."

percent of the number of days the regular schools of the district were maintained in such school year and has performed the duties normally required of a certificated employee of the school district," the employee is entitled to be "reemployed for the following school year to fill any vacant positions in the school district for which the employee is certified and qualified to serve." The statute denies reemployment rights, however, to day-to-day substitutes. The statutory exclusion states, "Those employees classified as substitutes, and who are employed to serve in an on-call status to replace absent regular employees on a day-to-day basis shall not be entitled to the benefits of this section." (Ed. Code, § 44918.)

The Board has taken the position that Moehnke was subject to the statutory exclusion during the period September 9 to December 5 because she was "classified" as a day-to-day substitute at that time, even though she actually worked as a long-term substitute for McFarland and was not in an on-call status, and thus she had no right to reemployment because her later employment as a temporary teacher comprised only 68 percent of the school year.

The Teacher's Association and Moehnke filed a petition for a writ of mandate, seeking Moehnke's immediate reemployment with retroactive probationary status plus backpay and fringe benefits. The court sustained a demurrer as to the request for backpay and fringe benefits, holding this claim was for damages and thus required adherence to the claim presentation requirements of the Tort Claims Act. (Gov. Code, § 810 et seq.) After trial on the reemployment issue the court rendered a memorandum of decision concluding that Moehnke was entitled to reemployment under Education Code section 44918 because her employment as a substitute "was not on a day-to-day basis, as is excluded by the statute, but rather was of such a nature that she performed the duties normally required of a certificated employee of the school district." Undisputed evidence supports the trial court's determination.

The court rendered a judgment which granted a writ of mandate requiring the Board to employ Moehnke with retroactive probationary status but denied the claim for backpay and fringe benefits. The Board filed a timely appeal from the portion of the judgment requiring reemployment. The Teacher's Association and Moehnke filed a timely cross-appeal from the portion of the judgment denying backpay and fringe benefits.

I

■ The Board contends that because it "classified" Moehnke as a day-to-day substitute during the three-month period McFarland was on

maternity leave, Moehnke did not accumulate credit during this period toward reemployment under Education Code section 44918, even though she actually performed duties entitling her to such credit. The Board concedes it classified Moehnke as a day-to-day substitute in order to deprive her of reemployment rights, but argues the Legislature intended that schools retain the ability to control their faculty work force through such classifications.

We note at the outset that section 44918 does not make reemployment rights dependent upon one's formal classification as a "day-to-day" or "long-term" substitute. The statute states only two classifications, "temporary" employees and "substitute" employees.[2] Employees classified as "substitute" are excluded from statutory reemployment benefits if they "are employed to serve in an on-call status to replace absent regular employees on a day-to-day basis." (Ed. Code, § 44918.) The issue, therefore, is not whether Moehnke was formally classified as "day-to-day" or "long-term," but whether Moehnke was employed to serve in an on-call status to replace absent regular employees on a day-to-day basis.

The operative word in the statutory exclusion is "employed," which in the present context could have two meanings, to "engage" or to "use" a teacher's services. (See Webster's New Collegiate Dict. (1981) p. 370.) The former meaning focuses on the capacity in which the teacher was hired, while the latter focuses on the capacity in which the teacher actually worked.

It takes little deductive reasoning to conclude that the Legislature could only have intended the latter meaning. Section 44918 confers reemployment rights upon substitute teachers who perform "the duties normally required of a certificated employee" for at least 75 percent of the school year. If a school district could invoke the statutory exclusion from this benefit merely by "engaging" teachers as day-to-day substitutes despite actually "using" them as long-term substitutes—that is, by calling them something they are not—the district could deprive each and every substitute teacher of reemployment rights through mere word play. Such unbridled power to circumvent the reemployment rights conferred by section 44918 cannot have been intended by the Legislature.

"The law respects form less than substance." (Civ. Code, § 3528.) Reemployment rights under section 44918 should depend upon the substantive nature of actual service rather than one's label as a day-to-day or long-term

---

[2] "The Education Code establishes four possible classifications for certificated employees: permanent, probationary, substitute and temporary." (*Taylor* v. *Board of Trustees* (1984) 36 Cal.3d 500, 504 [204 Cal.Rptr. 711, 683 P.2d 710].)

substitute. The answer to the Board's argument for school district control over its faculty work force is simply that local control must end where teachers' rights afforded by the Education Code begin. (See Ed. Code, § 35160 [school district may "act in any manner which is not in conflict with or inconsistent with, or preempted by, any law"].) We conclude that Moehnke's illusory classification as a day-to-day substitute did not deprive her of reemployment rights under section 44918.

The Board and amicus curiae California School Boards Association argue that unless school districts are permitted to determine reemployment rights through "classification" of substitutes, school boards will have to shuffle substitutes continuously from class to class—causing harm to students and administrative difficulties for schools and teachers—in order to prevent substitutes from earning reemployment rights and thereby enable the boards to hire the most qualified teachers for vacant positions. This point may have some superficial allure, but it raises many unanswered questions. Is there such a wide qualitative gap between substitutes and applicants for regular positions as to justify conferring upon school boards the ability to deprive de facto long-term substitutes of reemployment rights? Could this qualitative gap be narrowed or closed through careful hiring of substitutes? Is the qualitative gap so great that it justifies the harm to students which would result from continuous shuffling of substitutes? Is there truly a significant danger of such shuffling, or is this just an empty threat uttered in the heat of litigation? We are in no position to determine the answers to these questions. The Board and amicus curiae have raised a policy argument which questions the propriety of the legislative conferral of reemployment rights upon long-term substitutes. This argument is properly addressed to the Legislature, not the courts.

## II

■ The Teacher's Association and Moehnke contend on the cross-appeal that the court erred in denying the claim for backpay and fringe benefits. The court denied this claim on the ground it was one for damages against a local public entity and thus required adherence to the claim presentation requirements of the Tort Claims Act. (Gov. Code, § 810 et seq.)

Government Code section 905 imposes a claim presentation requirement for claims for "money or damages" against local public entities, with certain exceptions. One of the exceptions is claims by public employees for "salaries" or "wages." (Gov. Code, § 905, subd. (c).) Thus a primary issue and a potential subissue are presented here: was Moehnke's claim for backpay and fringe benefits a claim for "money or damages" within the general

scope of Government Code section 905, and if so was it an excepted claim by a public employee for "salaries" or "wages"?

The primary issue must be resolved in Moehnke's favor. "Those actions which seek injunctive or declaratory relief and certain actions in mandamus, . . . and where money is an incident thereto, are exempted from the statute." (*Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639, 643 [216 Cal.Rptr. 274].) The court in *Harris* held that a state employee's mandamus action for reinstatement and backpay was not a claim for money or damages subject to the Tort Claims Act: "Back salary was clearly relief incidental to appellant's request for an order of reinstatement to his employment. His mandamus action, therefore, is not subject to demurrer for failure to comply with the Tort Claims Act." (*Ibid.*; see Gov. Code § 905.2 [claims for money or damages against state].)

Similarly, the court in *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 870 [193 Cal.Rptr. 760], held that an action for injunctive relief and other remedies as redress for employment discrimination was not subject to the claim presentation requirements of the Tort Claims Act merely because backpay and punitive damages were sought. "[A]n action for specific relief does not lose its exempt status solely because incidental money damages are sought. . . . Back pay clearly is specific monetary relief *incidental* to the requested orders that appellant be hired and that respondents be enjoined from discriminating against him." (*Ibid.*, italics in original.)

Moehnke's case is indistinguishable from *Harris* and *Snipes*. She sought backpay and fringe benefits as an incident to her request for reemployment. Thus her mandamus action was not within the scope of Government Code section 905. The court erred in ruling otherwise.[3]

The trial court premised its ruling on the fact the monetary relief sought by Moehnke was not for services rendered. But this point is pertinent only to the potential subissue whether Moehnke's claim was excepted from section 905 as a claim for "salaries" or "wages." (Gov. Code, § 905, subd. (c).) Courts have held this exception applies solely to salaries and wages that have already been earned but have not been paid. (*Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 32 [234 Cal.Rptr. 612]; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080 [195 Cal.Rptr. 576]; *Hanson* v. *Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942, 946-948 [181 Cal.Rptr. 378].) That holding is

---

[3] The error is perhaps understandable: the court ruled on the demurrer five months before *Harris* was decided.

irrelevant to the broader question whether a claim is one for money or damages within the general scope of Government Code section 905. Because Moehnke's claim for backpay and fringe benefits was incidental to her request for reemployment and thus was not a claim for money or damages within the scope of section 905, the potential subissue whether the action was an excepted claim for earned salaries or wages does not arise at all.

The Board claims the holding in *Harris* conflicts with *Dilts, Loehr* and *Hanson.* There is no conflict. Unlike *Harris,* the actions in *Dilts, Loehr* and *Hanson* were not incidental to requests for reinstatement to employment but were fundamentally for pecuniary relief. The employee in *Hanson* sought money damages but not reinstatement. (129 Cal.App.3d at pp. 945, 947.) The employee in *Dilts* sought damages for breach of contract. (189 Cal.App.3d at pp. 30-31.) The employee in *Loehr* sought damages and reinstatement, but the appellate court, acknowledging the rule excluding incidental damages requests from the purview of the Tort Claims Act, concluded that the primary purpose of the action in that case was pecuniary in nature. (147 Cal.App.3d at pp. 1081-1082.)

We conclude the trial court erred in denying Moehnke's claim for backpay and fringe benefits based on her failure to comply with the Tort Claims Act. The claim presentation requirements of the Tort Claims Act were inapplicable.

The portion of the judgment denying the claim for backpay and fringe benefits is reversed with directions to the superior court to conduct further proceedings on that claim. In all other respects the judgment is affirmed. The Teacher's Association and Moehnke shall recover their costs on appeal.

Low, P. J., and Haning, J., concurred.

The petition of defendant and appellant for review by the Supreme Court was denied September 29, 1988.