[No. B169940. Second Dist., Div. Four. Nov. 23, 2004.]

ALEX BATES et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD et al., Defendants and Respondents.

**C**OUNSEL

Law Offices of Tabone and Derek L. Tabone for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, W. Dean Freeman and Stephen Lew, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**EPSTEIN, P. J.**—The issue in this case is whether plaintiffs may invoke the damage and injunctive relief provisions of the Information Practices Act (Civ. Code, § 1798[1] et seq., IPA) in a dispute with the Franchise Tax Board (Board or FTB). We conclude that they may, but that plaintiffs' damages claims are barred by the Government Claims Act (Gov. Code, § 900 et seq.).[2] We also conclude that the claims for injunctive relief based on violations relating to the assessment and collection of taxes rather than on violations of the IPA are barred by California Constitution, article XIII, section 32.

### FACTUAL AND PROCEDURAL SUMMARY

■ "The Information Practices Act, enacted in 1977, generally imposes limitations on the right of governmental agencies to disclose personal information about an individual. (*Anti-Defamation League of B'nai B'rith v. Superior Court* (1998) 67 Cal.App.4th 1072, 1078–1079 [79 Cal.Rptr.2d 597]; *Nicholson v. McClatchy Newspapers* (1986) 177 Cal.App.3d 509, 514, fn. 2 [223 Cal.Rptr. 58].) 'The statute was designed by the Legislature to prevent misuse of the increasing amount of information about citizens which government agencies amass in the course of their multifarious activities, the disclosure of which could be embarrassing or otherwise prejudicial to individuals or organizations.' (*Anti-Defamation League of B'nai B'rith, supra,* 67 Cal.App.4th at p. 1079 [79 Cal.Rptr.2d 597].)" ■ (*Jennifer M. v. Redwood Women's Health Center* (2001) 88 Cal.App.4th 81, 87–88 [105 Cal.Rptr.2d 544].) Section 1798.63 provides that the provisions of the Information Practices Act "shall be liberally construed so as to protect the rights of privacy arising under this chapter or under the Federal or State Constitution."

■ "Under the Act, state agencies are required to limit the collection and retention of personal information to that necessary to accomplish the agency's specific purpose (§ 1798.14). If an agency maintains such a record (§ 1798.32), individuals must be informed when they request it." (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 193 [228 Cal.Rptr. 169, 721 P.2d 50].)

Alex Bates, Patrick Dain, Mark Devries, Richard Keech, David Penney, and Demeter Rozsa (collectively plaintiffs) were involved in disputes with the

---

[1] All further references to specific provisions of the IPA within the Civil Code will be to Civil Code section.

[2] In *Baines Pickwick Ltd. v. City of Los Angeles* (1999) 72 Cal.App.4th 298, 310 [85 Cal.Rptr.2d 74], the court recommended that reference to the claims filing requirements be to the Government Claims Act rather than to the Tort Claims Act "to describe more accurately the scope of the claims presentation statutes." We adopt that recommendation.

Board over their state income taxes. They allege the Board violated provisions of the IPA by collecting, maintaining, and using nonpersonal information to determine their individual tax liabilities; by failing to provide the notice and access to information required by the IPA; and by failing to follow the procedures set out in the IPA. In the operative pleading, the first amended complaint, plaintiffs sued the Board, the Board of Equalization, former State Controller Kathleen Connell, and 12 other state employees. Causes of action 1, 2, 4, 6, 7, 9, 10, 12, 13, 15, and 16 allege violations of various provisions of the IPA.

Causes of action 3, 5, 8, 11, and 14 allege that employees of the Board or the Board of Equalization acted without authority in the course of determining the individual tax liability of the plaintiffs. The allegations of the third cause of action are illustrative. In it, plaintiff Bates alleges that two of the individual defendants conducted a notice of proposed assessment hearing but refused to provide documentation establishing their authorization to do so. He alleges: "Ramirez and Drakes, in both conducting the NPA hearing and Ramirez in purporting to determine Bates' tax liability, were acting outside of and/or in excess of any authority that had properly been delegated to them." In another allegation common to other plaintiffs in this action, Bates also alleges that the Board of Equalization "did not have the authority to re-delegate it's [*sic*] authority to hear and determine Bates' appeal to either the Chief Board of Proceedings or Tax Counsel III, which delegation would be in violation of *Title 18 § 5081 of the Code of Regulations*, nor did they have the authority to dismiss Bates' appeal for not having included a return." Bates concludes with an allegation that employees of the Board and the Board of Equalization created "determinations, assessments and liens adverse to Bates without the required authority . . . ."

The 17th cause of action by all plaintiffs against all defendants seeks injunctive relief under section 1798.47. The prayer for relief seeks preliminary and permanent injunctions to restrain defendants from future violations of sections 1798.14 through 1798.18, 1798.20–1798.22, 1798.30, and 1798.34–17.98.37. Plaintiffs also seek compensatory damages under section 1798.48, subdivision (a) and costs and fees under section 1798.48, subdivision (b).

Defendants demurred to the first amended complaint on the grounds that the only remedy for plaintiffs is a tax refund action, the California Constitution bars injunctive relief to prohibit collection of a tax, plaintiffs failed to comply with the Government Claims Act, and plaintiffs failed to allege a violation of the IPA. Plaintiffs opposed the demurrer. The trial court sustained the demurrer without leave to amend. It concluded that defendants are immune from liability "stemming from the interpretation or application of

tax law or the manner in which they assess or collect taxes," citing Government Code section 860.2. The court ruled that injunctive relief was barred under California Constitution article XIII, section 32. It concluded that the proper and exclusive remedy for tax disputes is suit for a refund. It did not reach defendants' argument that the actions were misjoined. A judgment (order of dismissal) was entered, followed by this timely appeal.

## DISCUSSION

### I

"We review a trial court's ruling on a demurrer independently. (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 187 [129 Cal.Rptr.2d 128].) ' "Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context." ' (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)" (*Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 281 [12 Cal.Rptr.3d 21].)

Here, the prolix 59-page first amended complaint contains 270 paragraphs of detailed allegations. Many are subject to special demurrer or a motion to strike, for example, those which seek damages for the Board's tax collecting activities. The trial court did not rule on any issue subject to special demurrer, such as misjoinder of the causes of action. Since the only issue before us is whether the complaint is sufficient to state a violation of the IPA, we do not attempt to parse the 270 paragraphs to determine which are actionable. This is more properly the subject of other procedural devices, such as special demurrer, motion to strike, or summary adjudication.

### II

The primary issue is whether plaintiffs allege a claim under the IPA. The gravamen of their complaint is twofold: (1) the Board used information which is not personal to them (nonpersonal information) to determine their tax liabilities; and (2) the defendants violated IPA administrative procedures in not giving plaintiffs access to records maintained about them. Paragraph 6 of the first amended complaint summarizes their claims: "Jurisdiction is conferred upon this court to hear and adjudicate this suit for maintaining and using *other than personal information as personal to Plaintiffs*, failure to provide the required valid notices to Plaintiffs, failure to provide Plaintiffs the source of information maintained, failure to provide Plaintiffs access to their

information, refusing to amend Plaintiff's records, . . ." (Italics added.) As we explain, we conclude that the first category is not actionable under the IPA, but that the second is.

## A

■ Defendants argue the IPA is intended to govern only use of *personal* information about individuals, and thus does not apply to the use of *nonpersonal* information. Section 1798.1 states the Legislature's declaration and findings. In it, the Legislature recognizes the fundamental right to privacy protected by the federal and state Constitutions; the growing threat to privacy posed by the "indiscriminate collection, maintenance, and dissemination of *personal information* and the lack of effective laws and legal remedies;" and the increased risk of privacy violations because of the use of computers and other information technology. (Italics added.)

■ The IPA has been construed as generally imposing "limitations on the right of governmental entities to disclose *personal* information about an individual." (*Anti-Defamation League of B'nai B'rith v. Superior Court, supra,* 67 Cal.App.4th at pp. 1078–1079, italics added.) "Personal information" is defined in the IPA as "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (§ 1798.3, subd. (a).)

■ As defendants point out, they are authorized to use information from other sources to estimate income if a taxpayer, like plaintiffs in this case, has failed to file a return. Revenue and Taxation Code section 19087, subdivision (a) provides: "If any taxpayer fails to file a return, or files a false or fraudulent return with intent to evade the tax, for any taxable year, the Franchise Tax Board, at any time, may require a return or an amended return under penalties of perjury *or may make an estimate of the net income, from any available information,* and may propose to assess the amount of tax, interest, and penalties due. . . ." (Italics added.)

■ In their briefing · on appeal, plaintiffs concede that Revenue and Taxation Code section 19087 "does allow the [Board] to make estimates of net income from sources other than a tax return supplied by the subject." By this concession, they appear to abandon the allegation in the first amended complaint that the Board's use of nonpersonal information to estimate their taxes is, in itself, actionable under the IPA. This concession is consistent with our reading of the Revenue and Taxation Code in harmony with the IPA. The

IPA is designed to control the government's use of *personal* information about an individual, and the Revenue and Taxation Code expressly authorizes the use of nonpersonal information to estimate income for taxpayers who decline to provide information by way of a tax return.

█ Our interpretation is buttressed by section 1798.70, which plaintiffs cite in support of their argument that the IPA supersedes the Revenue and Taxation Code. Section 1798.70 provides: "This chapter shall be construed to supersede any other provision of state law, including Section 6253.5 of the Government Code [California Public Records Act], or any exemption in Section 6254 or 6255 of the Government Code, which authorizes any agency to withhold from an individual any record containing personal information which is otherwise accessible under the provisions of this chapter." We conclude that the final clause of the statute expresses a legislative intent that the IPA supersede only provisions of state law which authorize the withholding of records containing personal information. This interpretation is consistent with the express purpose of the IPA, to govern the collection, maintenance, and use of *personal* information. The Revenue and Taxation Code provisions governing the estimation of income for persons who do not file tax returns, and the related provisions for the assessment and collection of taxes based on that estimate, are not superseded by the IPA. Since they are not, we conclude that the plaintiffs cannot state a violation of the IPA based on the defendants' use of nonpersonal information to assess and collect taxes.

B

█ This brings us to the plaintiffs' second basis for alleged IPA violations: "the information used must be collected, maintained and handled in compliance with the IPA." These allegations state an actionable claim. The IPA defines "agency" very broadly: "The term 'agency' means every state office, officer, department, division, bureau, board, commission, or other state agency, . . ." (§ 1798.3, subd. (b).) The FTB is not among the agencies excluded from this definition.

We are not persuaded by defendants' argument that the 2002 statute bars application of the IPA to the FTB. Defendants cite Revenue and Taxation Code section 19570 (Stats. 2002, ch. 694, § 2): "The provisions of Sections 1798.35, 1798.36, 1798.37, and Article 9 (commencing with Section 1798.45) of [the IPA] shall not be applied, directly or indirectly, to the determination of the existence or possible existence of liability (or the amount thereof) of any person for any tax, penalty, interest, fine, forfeiture, or other imposition or offense to which the provisions of Part 10 (commencing with Section 17001), Part 11 (commencing with Section 23001), or this part apply."

This statute, which became effective on January 1, 2003, is not applicable to our case. "[A] retroactive or retrospective law ' "is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." ' " (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751], quoting *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) "Generally, statutes operate prospectively only." (*Myers,* at p. 840.) " '[A] statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application . . . .' " (*Id.* at p. 841, quoting *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209 [246 Cal.Rptr. 629, 753 P.2d 585], italics added.)

Here there is no clear expression in the text of the statute of legislative intent to apply Revenue and Taxation Code section 19570 retroactively. We may resort to extrinsic sources, including legislative materials, to determine the Legislature's intent regarding the retroactive application of a statute. (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at p. 844.) The Third Reading Analysis of Senate Bill No. 2051, which added section 19570, makes it clear that the purpose of the new provision was to bring California law into conformity with the federal practice, and there is no mention of an intention that the change apply retroactively: "ANALYSIS: [¶] Existing law, California's Information Practices Act, closely patterned after the Federal Privacy Act of 1974, requires state agencies to comply with an individual's request for personal records, and establishes procedures for an individual to request amendment of those records. The Federal Privacy Act excludes tax information and matters related to tax liability from the record amendment procedures. [¶] Purpose of the Bill. To prohibit taxpayers from using the Information Practices Act to amend their income tax returns. The existing means of disputing a tax assessment (protest or appeal) and the ability to file an amended return are provided in the Internal Revenue Code (federal) and the California Revenue and Taxation Code. Those procedures are intended to be the only manner for disputing matters related to tax liability. The bill conforms our income tax law with the federal law in that regard." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2051 (2001–2002 Reg. Sess.).) Thus, while Revenue and Taxation Code section 19570 may bar any future action similar to the case before us, it does not apply to this case.

(14) Plaintiffs adequately allege that they unsuccessfully invoked provisions of the IPA in an attempt to learn the content of the defendants' records about them and to amend or correct that information. The IPA expressly makes the administrative procedures for access, amendment, and correction of information applicable to "records" maintained by state agencies. The definition of "records" does not depend on the dichotomy between personal

and nonpersonal information. Instead, "records" are defined as "any file or grouping of information about an individual that is maintained by an agency by reference to an identifying particular such as the individual's name, photograph, finger or voice print, or a number or symbol assigned to that individual." (§ 1798.3, subd. (g).) Plaintiffs allege that defendants failed to comply with the IPA administrative remedies guaranteeing access to records, and the right to request amendment or correction of records. (§§ 1798.32, 1798.34, 1798.35–1798.37.) This is sufficient pleading to allege a cause of action for violation of the IPA. We turn to defendants' arguments that their demurrer was properly sustained without leave to amend because neither injunctive relief nor damages are available to plaintiffs.

## III

As defendants argue, California Constitution, article XIII, section 32 provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." "The purpose of California Constitution, article XIII, section 32, ' "is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." ' [Citation.]" (*American President Lines, Ltd. v. Zolin* (1995) 38 Cal.App.4th 910, 920 [45 Cal.Rptr.2d 370].)

This constitutional prohibition has been applied to prevent prepayment review of tax measures. (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 837–838 [258 Cal.Rptr. 161, 771 P.2d 1247], relying on *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 280–281 [165 Cal.Rptr. 122, 611 P.2d 463].) It also has barred a broad range of actions which were found to restrain the collection of taxes. (See *People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526 [210 Cal.Rptr. 695] and cases collected in that decision.) This provision, defendants assert, bars plaintiffs' claim for injunctive relief.

Plaintiffs argue this authority is irrelevant because their complaint seeks redress for violations of the IPA, and does not relate to the FTB's duties in the assessment and collection of taxes. As we explain, we conclude there is merit to both arguments, because the first amended complaint contains allegations of IPA violations and allegations directed to tax collection activities. As we explain, the IPA violation allegations are viable, but those directed at tax collection are not.

The 17th cause of action for injunctive relief incorporates the allegations of the preceding causes of action. Causes of action 1, 2, 4, 6, 7, 9, 10, 12, 13,

15, and 16 allege various violations of the IPA. We refer to them collectively as the IPA causes of action. Plaintiffs allege the FTB routinely failed to provide notices about the use of information, as required by section 1798.17. That statute requires agencies to provide a specified notice in any form used to collect personal information from individuals. The notice includes identification of the agency requesting the information, the official who may inform an individual of the location of records, the categories of persons who may use the information in the records, the authority authorizing the maintenance of the information, the consequences of failure to provide the information, the purpose for which the information will be used, and the individual's right of access to the records containing personal information which are maintained by the agency. (§ 1798.17.)

Plaintiffs allege violations of sections 1798.18 (maintenance of accurate records), 1798.20 and 1798.21 (rules of conduct and safeguards regarding records), 1798.30 and 1798.32 (duty to provide information on accessing records and for contesting records), 1798.34 (inspection of personal records), 1798.35 (duty to amend records to delete references to nonpersonal information), and 1798.36 (duty to provide review of decision not to amend records). In their prayer for relief, they seek "preliminary and permanent injunctions against all Defendants to restrain them from violating" the specified provisions of the IPA. (Italics omitted.) These allegations are directed to violations of the IPA rather than to violations of the Revenue and Taxation Code provisions on the assessment and collection of taxes. We therefore conclude the cause of action for injunctive relief based on these violations is not barred by California Constitution, article XIII, section 32.

In some of the IPA causes of action, plaintiffs allege that defendants failed to comply with Government Code section 7171, subdivision (c)(5). That statute governs notice of a state tax lien given to a county recorder's office or the Secretary of State. Subdivision (c)(5) requires that a notice of tax lien must include a statement "that the agency has complied with all of the provisions of the applicable law for determining and assessing the tax." These allegations, unlike the others we have summarized, are addressed directly to tax collection procedures. For example, paragraphs 216 and 259 allege both general and mental suffering as a result of violations of the IPA and Government Code section 7171, subdivision (c)(5).

Other allegations of the first amended complaint also address tax assessment and collection procedures rather than the IPA. The second, sixth, seventh, tenth, and thirteenth causes of action allege the Board of Equalization violated Revenue and Taxation Code section 19047, which provides that the Board of Equalization "shall hear and determine the appeal [of a proposed deficiency assessment] and thereafter shall forthwith notify the taxpayer and

the Franchise Tax Board of its determination and the reasons therefor." These causes of action also allege violations of the implementing regulations, including California Code of Regulations, title 18, sections 5012, 5075.1, and 5081, which set out the procedures for appeals heard by the Board of Equalization.

To the extent that plaintiffs seek injunctive relief based on tax assessment and collection practices rather than on violations of the IPA, injunctive relief is barred by California Constitution, article XIII, section 32. We address the damages claims next.

## IV

Plaintiffs seek compensatory damages. Defendants argue that the demurrer was properly sustained without leave to amend on two grounds.

### A. *Government Code Section 860.2*

Defendants contend the damages action is barred because a tax refund action is the exclusive means for review of state tax proceedings. In support of this argument, they invoke Government Code section 860.2, which provides governmental immunity for damages claims based on tax collection activities: "Neither a public entity nor a public employee is liable for an injury caused by: [¶] (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax. [¶] (b) An act or omission in the interpretation or application of any law relating to a tax."

" 'Government Code section 815 declares that '[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.' The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception. ' "Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable." ' [Citations.]" (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1202 [84 Cal.Rptr.2d 496].)

Plaintiffs point out that section 1798.45 provides a private right of action against a state agency for violation of provisions of the IPA: "An individual may bring a civil action against an agency whenever such agency does any of the following: [¶] (a) Refuses to comply with an individual's lawful request to inspect pursuant to subdivision (a) of Section 1798.34.

[¶] (b) Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual. [¶] (c) Fails to comply with any other provision of this chapter, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."

Significantly, section 1798.48 expressly provides that an agency may be liable for damages: "In any suit brought under the provisions of subdivision (b) or (c) of Section 1798.45, the agency shall be liable to the individual in an amount equal to the sum of: [¶] (a) Actual damages sustained by the individual, including damages for mental suffering. [¶] (b) The costs of the action together with reasonable attorney's fees as determined by the court." The FTB is not among the agencies expressly excluded from the broad definition of "agency" applied to the IPA.[3]

We conclude that section 1798.45, together with section 1798.48, constitutes a statutory expression of governmental liability for damages, which, under Government Code section 815, controls over the immunity provided in Government Code section 860.2.

### B. Government Claims Act

Defendants contend that the damages action is barred because plaintiffs failed to allege their compliance with the Government Claims Act, a prerequisite to a damages action against the State. (Gov. Code, § 905.2; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239 [13 Cal.Rptr.3d 534, 90 P.3d 116].) Government Code section 905.2, subdivision (a) provides that a claim must be filed on any claim "for money or damages against the state . . . . [¶] (3) For money or damages on express contract, or for an injury for which the state is liable." Failure to allege compliance with the claims statute renders the complaint subject to general demurrer. (*State of California v. Superior Court, supra*, 32 Cal.4th at p. 1239.)

The claim filing requirement has been held applicable to claims arising out of negligence, nuisance, breach of statutory duties, intentional

---

[3] Section 1798.3 provides: "(b) The term 'agency' means every state office, officer, department, division, bureau, board, commission, or other state agency, except that the term agency shall not include: [¶] (1) The California Legislature. [¶] (2) Any agency established under Article VI of the California Constitution [the judicial branch]. [¶] (3) The State Compensation Insurance Fund, . . . [¶] (4) A local agency, as defined in subdivision (b) of Section 6252 of the Government Code."

wrongs and contract. (*Baines Pickwick Ltd. v. City of Los Angeles, supra,* 72 Cal.App.4th at pp. 305–307; *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576].) "A suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in ' "tort, contract or some other theory." ' " (*Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 778 [90 Cal.Rptr.2d 386], quoting *Baines Pickwick Ltd. v. City of Los Angeles, supra,* 72 Cal.App.4th at p. 307.)

Because plaintiffs failed to allege compliance with the Government Claims Act in their first amended complaint, their action for damages is barred unless an exception relieves them of this requirement. Plaintiffs make three arguments as to why they are not barred by their failure to file a claim.

### 1. *Section 1798.70*

 First, plaintiffs contend that section 1798.70 supersedes the Government Claims Act. We already have concluded that this statute does not supersede any state provision other than those authorizing an agency to withhold personal information about an individual.

### 2. *IPA Adminstrative Procedure*

Second, plaintiffs argue that because the IPA provides its own administrative procedure, they need not comply with the Government Claims Act as well. They cite a line of authority holding that in actions arising under the California Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.), plaintiffs who have complied with the administrative remedies set out in that statutory scheme have been excused from also complying with the Government Claims Act.

**(24)** The court in *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744 [120 Cal.Rptr.2d 550] examined that line of authority: "Exceptions to the filing requirement not specifically enumerated in the Government Claims Act have occasionally been allowed, but only where the claim is based on a statute or statutory scheme that includes a functionally equivalent claim process. *Snipes v. City of Bakersfield* [(1983)] 145 Cal.App.3d 861 [193 Cal.Rptr. 760] is illustrative. That case was an action against a city and its police department for employment discrimination under the Fair Employment and Housing Act. (Gov. Code, § 12900 et seq. (FEHA).) The trial court sustained a general demurrer without leave to amend on the ground that the plaintiff failed to allege that he complied with the claim filing requirement of the Government Claims Act. The Court of Appeal reversed, holding 'that the purposes and procedures of the FEHA demonstrate a legislative intent that

actions against governmental entities brought under the FEHA are to be excepted from the general requirements of the Tort Claims Act.' (*Snipes*, at p. 865.) After describing the statutory scheme in considerable detail, the court explained its reasoning: 'The procedural guidelines and the time framework provided in the FEHA are special rules for this particular type of claim which control over the general rules governing claims against governmental entities. The FEHA not only creates a statutory cause of action, but sets out a comprehensive scheme for administrative enforcement, emphasizing concilia- tion, persuasion, and voluntary compliance, and containing specific limita- tions periods.' (*Id.* at p. 868, italics omitted.)" (*Id.* at p. 764.)

In *Gatto*, an action for violation of free speech under the Unruh Civil Rights Act (Civ. Code, §§ 51, 52.1, subd. (b)), the court was required to determine whether the action was time-barred. The plaintiff argued that the Government Claims Act extended the applicable limitations period. The Court of Appeal concluded that the Unruh Act contains no provisions similar to the administrative enforcement scheme of FEHA, and therefore, there was no exemption from the claim filing requirement when the primary relief sought was monetary damages. (*Gatto v. County of Sonoma, supra,* 98 Cal.App.4th at p. 764.)

The IPA provides an administrative scheme to allow an individual access to agency records and to request the correction or amendment of those records. But based on a comparison of the IPA with FEHA, we conclude that it is not a comprehensive scheme which may take the place of the claims filing requirements, as FEHA may.

Under FEHA, an individual claiming a violation of that act may file a written verified complaint with the Department of Fair Employment and Housing (DFEH). (Gov. Code, § 12960.) The verified complaint must be served by the DFEH on the person or employer alleged to have committed the unlawful practice complained of. (Gov. Code, § 12962, subd. (a).) DFEH is empowered to investigate complaints, issue subpoenas, take depositions, and serve written interrogatories. (Gov. Code, §§ 12930, subd. (f), 12963–12963.4.) There is a one-year limit for filing a complaint. (Gov. Code, § 12960.) Among the remedies DFEH may impose upon a finding of discrimination, are cease and desist orders, actual damages, hiring, reinstatement, or upgrading of employees, backpay or frontpay, and emotional distress damages. (Gov. Code, § 12970.) An administrative fine may be imposed if the conditions for such a remedy are satisfied. (Gov. Code, § 12970, subd. (c).)

 The IPA sets out the procedures by which an individual may: inquire as to whether an agency maintains a record about him or her; receive notice of procedures to gain access to records; obtain copies of records; inspect

personal information in any record; request amendment of a record; request review of a refusal to amend; provide a statement of dispute about information to be included in the record; and obtain notice and review of a determination that information is exempt from access. (§§ 1798.32–1798.41.) But the IPA does not provide an administrative mechanism for the enforcement of these provisions. As originally enacted, the IPA provided for an Office of Information Practices.[4] But that office was abolished by Assembly Bill No. 66X, First Extraordinary Session of 1991–1992. (See Historical and Statutory Notes, 9B West's Ann. Civ. Code (1998 ed.) foll. art. 3, p. 147.) Since then, the IPA has provided only civil remedies, including actions for injunctive relief and damages. (§§ 1798.45–1798.53.) There is nothing in the IPA that would alert a government agency that an individual intends to seek damages, as opposed to injunctive relief, where there is a claimed violation.

We conclude the IPA does not have a claims procedure functionally equivalent to the Government Claims Act, and reject the argument that plaintiffs were not required to file a claim for damages on that ground.

### 3. *Incidental Damages*

Plaintiffs also invoke a line of authority finding an exception to the claim filing requirement where a damages claim is incidental to a claim for other relief, such as mandamus or injunctive relief. In *Gatto v. County of Sonoma, supra*, 98 Cal.App.4th at pp. 761–762, the court examined *Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469 [247 Cal.Rptr. 790], *Loehr v. Ventura County Community College Dist., supra*, 147 Cal.App.3d 1071, and *Snipes v. City of Bakersfield, supra*, 145 Cal.App.3d 861. But in *Gatto* the Court of Appeal agreed with the trial court's implied finding that "the request for damages was not merely incidental to a transcendent interest in injunctive relief but was the primary relief sought." (*Gatto, supra*, 98 Cal.App.4th at p. 762.) Gatto did not seek to vindicate the rights of anyone other than himself. He filed a claim for damages, mentioned damages first in the title of his complaint and in the prayer for relief, and invoked the damages provisions of the Unruh Civil Rights Act. (*Id.* at pp. 762–763.) We note that the appeal in *Gatto* followed a judgment in favor of the plaintiff on a court trial, rather than a demurrer as in this case.

In *Eureka Teacher's Assn. v. Board of Education, supra*, 202 Cal.App.3d 469, a public employee sought backpay and fringe benefits against a local

---

[4] Former sections 1798.4 through 1798.8 created the Office of Information Practices, which was authorized to investigate, determine, and report any violation of the IPA. The office also was empowered to mediate disputes between an agency and a complaining individual. But mediation under former 1798.8 was not a precondition to an individual's utilization of civil remedies.

governmental entity. The court found the claim for backpay and fringe benefits was incidental to her request for reemployment and thus was not a claim for money or damages within the scope of the Government Claims Act. (*Id.* at pp. 474–476.) Like *Gatto*, the appeal in *Eureka Teacher's Assn.* followed a trial on the merits.

In *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d 1071, the plaintiff sued for damages for wrongful termination and reinstatement to his former position as superintendent and chief executive officer of the community college district. The trial court sustained demurrers without leave to amend on the ground that plaintiff had failed to comply with the government claim requirements. On appeal, plaintiff argued that he was not required to file a claim because two of his six causes of action sought mandamus and injunctive relief. The *Loehr* court invoked the rule that a claim is required where a petition for extraordinary relief is merely incidental or ancillary to a prayer for damages. (*Id.* at p. 1081.)

The court in *Loehr* examined the causes of action for nonpecuniary relief in light of the complaint as a whole. "Having reviewed plaintiff's self-styled causes of action for mandamus and injunctive relief in light of the complaint as a whole, we are convinced that the primary purpose of these claims is pecuniary in nature. Although we recognize that in some situations a claimant may seek both damages and nonmonetary relief from a public entity in the same action, and thus invoke a basis of recovery which is not within the purview of the Tort Claims Act, we do not believe this to be such a case. (See *Minsky v. Los Angeles* [(1974)] 11 Cal.3d 113 [113 Cal.Rptr. 102, 520 P.2d 726]; *Holt v. Kelly* (1978) 20 Cal.3d 560, 565 [143 Cal.Rptr. 625, 574 P.2d 441].) As in other portions of the complaint, both the fourth and fifth causes of action (nominally denominated as 'writ of mandate and injunctive relief regarding common law principles of fair procedure and substantive due process' and 'writ of mandate and injunctive relief regarding violation of Education Code section 87031') seek recovery for loss of future earnings, emotional and mental distress, pain and suffering, humiliation, and damage to reputation. Under the circumstances, the damages that plaintiff seeks to obtain by way of these allegations are anything but incidental or ancillary to his request for extraordinary relief." (*Loehr v. Ventura County Community College Dist., supra,* 147 Cal.App.3d at pp. 1081–1082.)

Here, except for the 17th cause of action, each cause of action culminates in an allegation that the violations of the IPA gave rise to both general and mental suffering damages. No request for injunctive relief is included in these causes of action. The injunctive claims are confined to the 17th cause of action.

We therefore conclude that the claims for damages are not merely incidental to the claim for injunctive relief, and that plaintiffs have failed to successfully establish an exception to the Government Claim Act. The trial court correctly sustained a demurrer without leave to amend as to these claims. In light of this conclusion, we need not address defendants' additional arguments concerning the 3rd, 5th, 8th, 11th, and 14th causes of action, which allege what plaintiffs concede is a "novel" cause of action—acting without authority.

## DISPOSITION

The judgment of dismissal is affirmed as to the first 16 causes of action seeking damages. As to the 17th cause of action for injunctive relief, the judgment is reversed insofar as plaintiffs seek injunctive relief for violations of the IPA only. Plaintiffs and defendants are to bear their own costs on appeal.

Curry, J., and Grimes, J.,* concurred.

A petition for a rehearing was denied December 15, 2004, and appellants' petition for review by the Supreme Court was denied February 23, 2005.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.