Filed 12/2/20  B.Q. v. Mesa Union School Dist. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| B.Q., a Minor, etc.,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>MESA UNION SCHOOL DISTRICT,<br><br>　　Defendant and Respondent. | 2d Civ. No. B303351<br>(Super. Ct. No. 56-2019-00529221-CU-CR-VTA)<br>(Ventura County) |

　　Plaintiff B.Q., a minor by and through his guardian ad litem, appeals a judgment of dismissal following the sustaining of a demurrer without leave to amend on his lawsuit against the Mesa Union School District (District).  He alleged he is a Muslim student and suffered harm due to his teacher's biased, insulting, and discriminatory attacks on his religion.

　　We conclude, among other things, that the trial court correctly ruled that the Prohibition of Discrimination in

1

Education (PDE) Act (Ed. Code, § 220)[1] does not eliminate the requirement that a plaintiff seeking damages against a public school district must first file a government tort claim (Gov. Code, § 905) before filing a PDE action. Here because the plaintiff did not file a government tort claim, the trial court properly sustained a demurrer without leave to amend. We affirm.

FACTS

In 2017, B.Q. was a seventh grade elementary school student in the District. He was the "only Muslim student" in the District's seventh grade language arts and social studies classes.

B.Q.'s social studies teacher passed out a "worksheet" to his students that contained "false and discriminatory information about Sharia law and Islamic practices." The worksheet included information the teacher obtained from an "Islamophobic website." The goal of that website was to "support the growth of Christianity."

The worksheet contained "false and offensive" translations of Sharia law. During one class discussion, B.Q.'s teacher's "lesson and comments directly informed his classmates that Islam permits Muslims to rape with the blessing of Allah." After one lesson, B.Q. heard a male student tell a female student that "if he were Muslim, he could rape her if he wanted to and no one would care."

Part of the instructional material the teacher provided taught students that a "[Muslim] man can marry an infant girl and consummate the marriage when she is 9 years old." "A woman or girl who alleges rape without producing 4 male witnesses is guilty of adultery." "A woman or girl found guilty of

_____

[1] All statutory references are to the Education Code unless otherwise stated.

adultery is punishable by death." "Muslim men have sexual rights to any woman/girl not wearing the Hijab."

In one lesson the teacher asked the students to compare Islamic culture with American culture to "driv[e] home the point that Muslims are different and a disfavored group." The teacher also showed the students videos with "images of Muslims engaged in violent behavior, fighting with guns, and whipping and enslaving each other with chains." He depicted Islam "as a violent religion that supports and encourages war." The teacher had a "personal bias against Islam and Muslims." He created a "discriminatory and hostile environment toward Islam" and B.Q., a practicing Muslim.

After reviewing the teacher's worksheet, B.Q.'s classmates made comments such as, " 'This religion is so messed up' " and " 'I can't believe that people actually follow this religion.' " B.Q. was offended and concerned about the way his teacher was instructing his classmates to think about his religion.

On October 24, 2017, B.Q.'s parents contacted the school to complain about the content of the class. B.Q.'s mother informed the school principal that she wanted her representative from the Council of American-Islamic Relations (CAIR) to meet with the principal and the teacher to "informally resolve the situation." The principal would not agree to this meeting. He directed her to file "a complaint through the uniform informal complaint process."

On October 26, 2017, CAIR filed an administrative complaint with the District alleging religious discrimination. CAIR noted that B.Q. had been "bullied because of his Islamic faith." It claimed the District had failed to take action to stop

this discrimination. During one incident, a student shouted "Allahu Akbar" at B.Q. in-between classes.

From October 25, 2017, to November 1, 2017, B.Q. was absent from school because the District did not take any action on his request to stop the religious discrimination. B.Q. did not attend the language and social studies classes because he believed his teacher "hated all Muslims and may harm him." When he came back to school, B.Q. sat in the library during the language and social studies classes.

On November 27, 2017, the CAIR advocate emailed the District's legal counsel indicating concerns about B.Q.'s isolation and the ineffectiveness of the District's alternative individual learning plan for B.Q.

On December 13, 2017, the District board held a closed session regarding B.Q.'s complaint entitled "Conference with Legal Counsel - Anticipated Litigation." CAIR had asked the District to require that the teacher apologize and the lesson plan about Islam be discontinued.

The District's board denied B.Q.'s complaint. The District issued a report noting that it had determined that the teacher's worksheet was not "improperly motivated by religious discriminatory intent" and it did not create a "hostile environment." It also decided that the website the teacher relied on was "primary source material."

On January 10, 2018, B.Q.'s attorney filed an appeal to the State Department of Education (SDE). (§ 262.3.) The 10-page appeal described the discriminatory behavior of the teacher, the District, and the harm to B.Q.; counsel made a demand for monetary damages.

4.

The SDE granted the appeal and ordered the District to take corrective action. It ruled that the website selected by the teacher "carried a discriminatory bias against Islam" and that the District board could not approve such educational instruction for elementary school students. It said the "lesson constituted *discrimination based on religion in violation of . . .* Section 220." (Italics added.)

B.Q. had initially filed a federal civil rights action (42 U.S.C. § 1983) against the District in December 2018. He subsequently dismissed that action and filed the instant first amended complaint against the District for violation of section 220 and negligence in the Ventura County Superior Court. He sought general and special damages.

On September 5, 2019, the District filed a demurrer to the complaint on the ground that the action was "barred for failure to comply with the Government Claims Act [Government Code] §§ 910, 945.4."

The trial court sustained the demurrer without leave to amend. It said, "The underlying facts as alleged in the complaint are deplorable. Nonetheless, this is a claim against a public entity for money damages. Filing a claim before filing a lawsuit is required in virtually all cases against a public entity. This was not done here, and there is no area of exception to avoid that requirement."

## DISCUSSION

### *A Government Claims Filing Requirement for PDE Actions*?

B.Q. contends the trial court erred because he was "not required to file a separate Government Tort Claim" for his PDE cause of action. (§ 220.) He claims: 1) his filing of an administrative appeal under the Education Code's Uniform

Complaint Procedures (§ 262.3) was all that was required, and 2) the Legislature intended to exempt PDE causes of action from the governmental tort claim requirement. We disagree.

"Ordinarily, filing a claim with a public entity pursuant to the Claims Act [Gov. Code, §§ 905, 910] is a jurisdictional element of any cause of action for damages against the public entity [citations] that must be satisfied *in addition* to the exhaustion of any administrative remedies . . . ." (*Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932, 938.) Exceptions to this "[claims] presentation procedure are rarely found." (*Id.* at p. 939.)

The PDE Act (§ 220) prohibits discrimination based on religion by any "educational institution" that receives state financial assistance. (§ 220.) "[M]oney damages are available in a private enforcement action under section 220." (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 579.) But this statute does not contain an express exemption from the requirement that a plaintiff suing a school district for damages must initially file a claim under the Government Claims Act. (Gov. Code, §§ 905, 910.) This is some indication that the Legislature did not intend to eliminate this claims filing requirement here. (See, e.g., *Gay-Straight Alliance Network v. Visalia Unified School Dist.* (E.D.Cal. 2001) 262 F.Supp.2d 1088, 1110.)

" 'Exceptions to the filing requirement not specifically enumerated . . . have occasionally been allowed, but only where the claim is based on a statute or statutory scheme that includes a functionally equivalent claim process.' " (*Bates v. Franchise Tax Board* (2004) 124 Cal.App.4th 367, 383.) These exceptions involved claims made to state agencies that were created to

6.

evaluate and determine claims for damages under the statute that created the agency, and the statute contained a detailed investigative and comprehensive damage claim process. One example is the Department of Fair Employment and Housing (DFEH). In *Bates*, the court noted that the Fair Employment and Housing Act (FEHA) contained a functionally equivalent claims process that allowed litigants to use it in lieu of the Government Claims Act procedure. The court said, "DFEH is empowered to investigate complaints, issue subpoenas, take depositions, and serve written interrogatories." (*Bates*, at p. 384.) "Among the remedies DFEH may impose upon a finding of discrimination[] are cease and desist orders, actual damages, hiring, reinstatement, or upgrading employees, backpay or frontpay, and emotional distress damages." (*Ibid*.) The DFEH was an agency specifically created to screen and evaluate damage claims and provide a damage remedy.

B.Q. contends there is a similar claims process in the Education Code. We disagree.

Under section 262.3, subdivision (a), "[a] party to a written complaint of . . . discrimination *may* appeal the action taken by the governing board of a school district . . . to the [SDE]." (Italics added.) This administrative appeal process is not mandatory. Those who elect to forego this process are not precluded from filing a PDE action. (§ 262.3, subd. (c).) The mere existence of this optional administrative remedy does not mean the administrative participant is automatically excused from complying with the Government Claims Act when he or she decides to sue a district for damages. (*Bates v. Franchise Tax Board*, *supra*, 124 Cal.App.4th at p. 385.)

For those who use this administrative appeal process, there is a provision that delays seeking civil damages. Section 262.3, subdivision (d) provides, in relevant part, "[A] person who alleges that he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the [SDE]." But there is no express reference or connection between this time period and the Government Claims Act requirements. This 60-day period allows the SDE time to attempt to mediate disputes by parties to the appeal. (*Donovan v. Poway Unified School Dist.*, *supra*, 167 Cal.App.4th at p. 608.)

B.Q. suggests this legislation was intended to change existing law by eliminating the requirement that a government claim must be filed before filing a PDE damage lawsuit. But the goal was to provide an optional administrative procedure for those who wanted to use it and to declare that this process was not a requirement for filing litigation. Section 262.3, subdivision (c) provides, "Nothing in this chapter shall be construed to require an exhaustion of the administrative complaint process before *civil law remedies* may be pursued." (Italics added.) Those "civil law remedies" would include both the government claim and the subsequent lawsuit.

Section 262.3 does not specifically address whether a government tort claim is required. But this very short administrative appeal statute does not include the type of requirements that show the Legislature intended it as a substitute for the detailed rules, time requirements, and protections of the Government Claims Act. (*Bates v. Franchise Tax Board*, *supra*, 124 Cal.App.4th at p. 385.)

8.

Unlike the Government Claims Act, section 262.3 does not require the appellant to file a claim for damages against a district or require the SDE to decide damage claims. It does not designate the SDE as an expert state agency in evaluating damage claims or awarding damages. As the District notes, the regulations relating to the appeals process refer to the SDE's ability: 1) to review the actions of the District, and 2) to order *future* corrective action to make the District comply with state policies. But there is nothing that gives the SDE the authority to consider or decide damage claims or to financially compensate a student. (Cal. Code Regs., tit. 5, §§ 4632, 4633.)

Consequently, this appeals process is a review of a district's compliance with state procedures, not a forum to litigate tort claims. In B.Q.'s appeal, the SDE decided whether a lesson plan violated state education policies on religion and it ordered corrective action by the District. It did not address B.Q.'s damage claims. The SDE's "corrective action" included granting the appeal, requiring the District to give B.Q. five one-hour counselling sessions, and requiring future training for social studies teachers and students. But there was no monetary compensation for the damage B.Q. suffered. In other words, he could prevail on this appeal, but the SDE could not, and did not, consider a claim for damages.

Appellants using this appeals process may not wish to sue a district and may not have a damage claim, and those who have damage claims are not required to use it. The Government Claims Act, by contrast, requires all who seek damages to use the claims filing procedures. Section 262.3 "does not have a claims procedure functionally equivalent to the Government Claims Act." (*Bates v. Franchise Tax Board*, *supra*, 124 Cal.App.4th at

p. 385.)  It is not a forum equipped to decide damages.  Sections 220 and 262.3 contain "no comparable provisions" to DFEH's extensive damage remedies and damage claim process "and there is, therefore, no reason to exempt actions under those statutes from the claim filing requirement where the primary relief sought . . . is money damages." (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 764.)

B.Q. contends the Legislature intended the Education Code antidiscrimination provisions be interpreted consistent with FEHA.  He relies on the general purpose language of section 201, subdivision (g).  That provision involving the student's right to be free from discrimination shows that substantive right shall be consistent with FEHA, the federal Civil Rights Act of 1964, title IX, etc.  But, as the District notes, the Legislature did not adopt the claim procedures of the FEHA statute into the Education Code.  In *Donovan*, the court said, "[T]here is little or no support in the legislative history showing the Legislature based the antidiscrimination provisions in the Education Code on FEHA and its *statutory framework* . . . ." (*Donovan v. Poway Unified School Dist.*, *supra,* 167 Cal.App.4th at p. 597, italics added.)

B.Q. notes that in *Cornejo v. Lightbourne*, the court ruled Whistleblower Protection Act (WPA) claims were a valid substitute for the Government Claims Act requirements.  But for WPA, and FEHA, the statutes and regulations not only authorize those agencies to decide damages, but they also specify the types of damages to be awarded and include comprehensive procedures to determine the damages.  The absence of such provisions in section 262.3 shows a legislative intent not to consider it to be a Government Claims Act substitute.  The WPA procedure contains "every function of the presentation procedure" for damage claims

10.

(*Cornejo v. Lightbourne, supra*, 220 Cal.App.4th at p. 941); section 262.3, by contrast, does not.

Moreover, the Legislature would not change the claims filing requirement without considering the impact on the school districts. (*Rubenstein v. Doe. No. 1* (2017) 3 Cal.5th 903, 916.) But section 262.3 does not provide districts with the procedural protections of the Government Claims Act. Under that act, districts are entitled to pre-litigation notice that a claimant is seeking damages. (Gov. Code, §§ 905, 910.) But section 262.3 does not require appellants to declare whether they are seeking damages against a district. If that were the case, districts would not learn claimants were seeking damages until after the claimants filed a lawsuit. This would deprive districts of their pre-litigation right to investigate claims. (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1151.) Section 262.3 is not a replacement for the claims filing requirement.

The parties cite *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, *supra*, 262 F.Supp.2d 1088 and note there the court essentially found section 220 damage actions must be initiated by complying with the Government Claims Act. The court found that even though a plaintiff did not file a standard form government tort claim, he could proceed with his action because he had otherwise "*substantially complied with the claims presentation requirement.*" (*Id.* at p. 1110, italics added.) B.Q. claims that this case is distinguishable because there was no indication that the plaintiff had also filed an appeal under section 262.3. But B.Q. has not shown why the Legislature would create two classes of section 220 plaintiffs, with one having to file a claim and the other exempt. Moreover, using or not using the

11.

section 262.3 procedure would not change the result because it is not a forum for damage claims. Half of B.Q.'s lawsuit also involves seeking damages for a negligence cause of action. He has made no showing how that cause of action is exempt from the claims filing requirement.

Legislative intent may be determined by what the Legislature declined to place in a statute. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 146.) Had lawmakers intended to make a significant change from the normal claims filing requirement to more easily facilitate a new Education Code cause of action, they would be expected to have expressly made that change in section 220 or 262.3. (*V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 511 [where the Legislature intends a statute to change the Government Claims Act requirements, it will expressly include that change in the legislation].) The absence of such an Education Code provision supports the District's position.

The Legislature, however, has considered the issue of exceptions to the claims filing requirement in the Government Code. (Gov. Code, § 905.) It is well established that "unless *specifically excepted, any* action for money or damages . . . may not be maintained until a claim has been filed with the relevant public entity and either the public entity acts on it or it is deemed to have been denied by operation of law." (*Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 642, italics added.)

The Legislature has specified the exceptions to the claims filing requirement in Government Code section 905, subdivision (a). That section, which was amended in January 2020, contains 15 exceptions to the claims filing requirement. But causes of

action under section 220 are not included in that list.  The District notes that had the Legislature intended to exempt section 220 causes of action from the claims filing requirement, it could have easily added those cases to the list at any time since 1982.

" 'The Legislature "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." ' "  (*County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1269.)  The Legislature has amended Government Code section 905 numerous times since 1963.  The absence of an exception for Education Code section 220 damage causes of action shows an intent that such actions must be initiated after the plaintiff has met the claims filing requirement.  (*County of Los Angeles*, p. 1269.)

The purpose of the Government Claims Act " 'is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances.' "  (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.)  The claims presentation requirement is consequently applicable unless the plaintiff can fall within one of the "statutorily enumerated exceptions" in Government Code section 905.  (*Nasrawi v. Buck Consultants, LLC* (2014) 231b Cal.App.4th 328, 338.)  Those statutory exceptions "have been *narrowly construed*."  (*Hanson v. Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942, 946, italics added.)  B.Q. has not shown that his case falls within one of them.  "A public entity's knowledge of an incident and injuries does not excuse the claim requirement."  (*Lowry v. Port San Luis Harbor Dist.* (2020) 56 Cal.App.5th 211, 218.)  The trial court

correctly ruled that B.Q. was not exempt from the claims filing requirement.

B.Q. was represented by counsel at all relevant times. Because he did not file a government tort claim, the trial court properly sustained a demurrer without leave to amend. We have reviewed B.Q.'s remaining contentions and we conclude he has not shown grounds for reversal.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

14.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Pachowicz/Goldenring, Mark Pachowicz and Jonny Russell for Plaintiff and Appellant Minor, by and through his guardian ad litem.

Woo Houska, Maureen M. Houska; Greines, Martin, Stein & Richland, Timothy T. Coates and Nadia A. Sarkis for Defendant and Respondent.