[No. A111423. First Dist., Div. Two. Dec. 18, 2006.]

PAUL R. LOZADA, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Philip J. Kaplan and Philip J. Kaplan for Plaintiff and Appellant.

Silver, Hadden & Silver, Lawrence J. Friedman and Stephen H. Silver for The Peace Officers' Research Association of California Legal Defense Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, Molly Stump, Chief City Attorney, David A. Carrillo and Katharine Hobin Porter, for Defendants and Respondents.

Jones & Mayer, Martin J. Mayer, Krista MacNevin Jee and Jennifer Henning for League of California Cities, California State Sheriff's Association, California Police Chiefs' Association and California State Association of Counties as Amici Curiae for Defendants and Respondents.

**OPINION**

**KLINE, P. J.—**

## Introduction

Is a public safety officer, when seeking actual damages and civil penalties in addition to declaratory and injunctive relief for alleged violations of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq. (POBRA)) required to present a claim to the public entity employer pursuant

to the "Government Claims Act"[1] (Gov. Code, § 900 et seq.)?[2] We shall conclude that in this case, where the claims for money and damages pursued by the officer were more than "incidental" to the extraordinary relief sought, the answer is yes.

Police Officer Paul R. Lozada appeals from a judgment of the San Francisco County Superior Court in favor of defendants City and County of San Francisco (hereafter City) and individual defendants. He contends that the trial court erred in granting summary adjudication of his cause of action against City for numerous alleged violations of POBRA on the ground that his failure to file a claim pursuant to the Government Claims Act barred his POBRA cause of action. He asserts that a public safety officer pursuing an action under POBRA has a right to immediate access to the courts, without first complying with the Government Claims Act. In the alternative, he argues that his POBRA claims were not "for money or damages" within the meaning of the Government Claims Act or were necessarily incidental to his claims for extraordinary relief.[3] We shall affirm the judgment.

## Facts and Procedural Background

It is undisputed that Lozada failed to comply with the claim presentation requirement of the Government Claims Act.[4] The operative complaint in this matter is the "Second Amended Complaint for Damages and Declaratory and Injunctive Relief . . . ." filed by Lozada on December 28, 2004. In this complaint, Lozada alleged that he was a peace officer employed by the San Francisco Police Department (SFPD), that on January 23, 2003, he fired his weapon at an oncoming vehicle in self-defense, and that in the months following the discharge of his weapon, SFPD (and hence, City) violated his procedural rights under POBRA in at least 13 instances.

---

[1] As we noted in *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 750, footnote 3 [120 Cal.Rptr.2d 550] (*Gatto*), the claim filing requirements of this statute, usually referred to as the Government Tort Claims Act or the Tort Claims Act "are not limited to tort claims, but extend also to claims for money or damages based on contract [citation], and 'Government Claims Act' is therefore a more appropriate label than Tort Claims Act."

[2] All statutory references are to the Government Code, unless otherwise indicated.

[3] Pursuant to our permission, amicus curiae The Peace Officers Research Association of California Legal Defense Fund (PORAC) has filed a brief in support of Lozada. Amici curiae the League of California Cities, the California State Sheriffs' Association and the California Police Chiefs Association have filed a brief in support of City. The California State Association of Counties received our permission to join as amicus curiae in the brief supporting City.

[4] The parties agree that the underlying facts of the case are not pertinent to the issues on appeal.

Lozada also alleged violation of his constitutional rights under 42 United States Code section 1983, including First Amendment retaliation, denial of equal protection under the law because of his national origin, denial of substantive and procedural due process, and violations of the California Fair Employment and Housing Act (§ 12900 et seq. (FEHA)).

Lozada sought the following relief in connection with his POBRA claim: "1. For back pay (including overtime and lost vacation time), front pay, and other monetary relief in an amount according to proof; [¶] 2. For general damages in an amount according to proof; [¶] 3. For a civil penalty of $25,000 for each and every violation of [POBRA, pursuant to section 3309.5, subdivision (d)]; [¶] 4. For punitive damages in an amount appropriate to punish defendant for its wrongful conduct and set an example for others; and [¶] 5. For prejudgment interest at the maximum legal rate, commencing on the first date of violation" and for attorney fees and costs. Lozada also alleged in connection with this cause of action that he "has suffered humiliation, mental anguish, and emotional and physical distress. As a result, plaintiff has suffered further damages in an amount according to proof." He also alleged that City had acted with "oppression, fraud, and malice."

By order dated February 28, 2005, the trial court granted City's motion for summary adjudication as to Lozada's POBRA cause of action on the ground that the claim was barred by Lozada's failure to file a claim under the Government Claims Act. (§§ 905, 945.4.) As to the remaining non-POBRA claims, the court order granted in part and denied in part defendants' motion for summary judgment and/or summary adjudication. The remaining causes of action proceeded to a jury trial, resulting in a verdict in favor of defendants and against Lozada. Judgment was entered on June 16, 2005. Lozada filed this timely appeal on August 11, 2005.

## Discussion

■ The sole issue on appeal is whether the trial court erred in ruling that Lozada's POBRA claims were barred by his failure to comply with the claim presentation requirements of the Government Claims Act.

### A. Standard of Review

"We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]" (*Intel Corp. v.*

*Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; see Code Civ. Proc., § 437c, subd. (c).) The interpretation of POBRA and the Government Claims Act and the applicability of the latter to the former clearly present questions of law. The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 522–523 [16 Cal.Rptr.3d 909]; *Mart v. Severson* (2002) 95 Cal.App.4th 521, 530 [115 Cal.Rptr.2d 717]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) ¶ 8:4, p. 8-2.)

## B. *POBRA*

■ Enacted in 1976, POBRA is "primarily a labor relations statute. It provides a catalog of basic rights and protections that must be afforded all peace officers by the public entities which employ them. [Citations.]" (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 304 [98 Cal.Rptr.2d 302], fn. omitted (*California Correctional Peace Officers*).) POBRA "secures to public safety officers certain political rights (§ 3302) and prescribes certain protections that must be afforded them in connection with investigations of misconduct involving them and punitive actions taken against them. (§§ 3303, 3305–3309.) It also protects officers from retaliation for the exercise of their rights under the act. (§ 3304. See *Baggett v. Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874].)" (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1421 [4 Cal.Rptr.2d 203].) In addition, POBRA assures a public safety officer the right to an administrative appeal when any punitive action is taken against the officer. (§ 3304, subd. (b).) POBRA affords a public safety officer the opportunity to review and sign any instrument containing any adverse comment before it is entered in the officer's personnel file (§ 3305) and 30 days to respond in writing to any adverse comment placed in the file (§ 3306). (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 561 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

The purpose of POBRA was summarized by the California Supreme Court as follows: "The Bill of Rights Act declares 'that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers.' (§ 3301.)" (*County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 799 [118 Cal.Rptr.2d 167, 42 P.3d 1034]; accord, *Seligsohn v. Day, supra,* 121 Cal.App.4th at p. 523.)

"The rights and protections afforded by [POBRA] benefit not only public safety officers but the public in general. By promoting stable employer-employee relations, [POBRA] fosters a solid and secure public safety work force. (*Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254 [239 Cal.Rptr. 18].) It also encourages peace officer cooperation in investigations of possible wrongdoing. [Citation.] Alleged violations of [POBRA] therefore implicate duties 'which inure[] to the benefit of the public at large' [citation], transcending the employer-employee relationship . . . ." (*Shoemaker v. Myers, supra,* 2 Cal.App.4th at p. 1421.)

■ Since 1979, section 3309.5 has provided that the "superior court shall have initial jurisdiction over any proceeding" brought by a public safety officer for alleged violations of POBRA. (§ 3309.5, subd. (c) [formerly found in subd. (b)].) As originally enacted, POBRA provided that violations should be remedied by "appropriate injunctive or other extraordinary relief" including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer. (§ 3309.5, former subd. (c).[5]) (Added by Stats. 1979, ch. 405, § 1, p. 1493.) In 2002, section 3309.5 was amended to add current subdivision (e), to provide, in addition to extraordinary relief, a civil penalty, attorney fees and actual damages in cases of malicious violation of an officer's POBRA rights with intent to injure the officer. "In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages. . . ." (§ 3309.5, subd. (e).)

## C. *Government Claims Act*

■ Section 905 of the Government Claims Act provides that, with certain specified exceptions, "all claims for money or damages against local public

---

[5] The injunctive and extraordinary relief provision is currently found in section 3309.5, subdivision (d)(1).

entities" must be presented in accordance with the claim presentation statutes. In 2004, the California Supreme Court spoke in broad terms about the reach of the claim presentation requirement of the Government Claims Act, stating that the act "establishes certain conditions precedent to the filing of a lawsuit against a public entity. As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. (§ 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity. (§ 945.4.)" (*State of California v. Superior Court (Bodde)* (2004) 32 Cal.4th 1234, 1237 [13 Cal.Rptr.3d 534, 90 P.3d 116] (*Bodde*).)[6] The public entity is required to act upon a claim "within 45 days after the claim has been presented" (§ 912.4, subd. (a)) or "the claim shall be deemed to have been rejected . . . ." (§ 912.4, subd. (c).) Where the complaint fails to allege facts demonstrating or *excusing compliance* with the claim presentation requirements, the complaint is subject to a general demurrer. (*Bodde*, at p. 1237.)[7]

According to the Law Revision Commission, the claims presentation requirements serve two basic purposes: " 'First, they give the governmental entity an opportunity to settle just claims before suit is brought. Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim.' [Citations.]" (1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2006) Claims Against Public Entities, § 5.6, p. 168 (California Government Tort Liability Practice), quoting 4 Cal. Law Revision Com. Rep. (1963) p. 1008.) The requirement also "enable[s] the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future. (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709 [263 Cal.Rptr. 119, 780 P.2d 349]; *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576].)" (*Baines Pickwick Ltd. v. City of Los Angeles* (1999) 72 Cal.App.4th 298, 303 [85 Cal.Rptr.2d 74]; accord, *TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742 [5 Cal.Rptr.3d 408] (*TrafficSchoolOnline*); *Gatto, supra*, 98 Cal.App.4th at p. 763.)

---

[6] Section 945.4 provides: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

[7] Although the failure to allege facts showing compliance or excusing compliance will render the complaint subject to demurrer, "noncompliance does not divest the trial court of subject matter jurisdiction over causes of action against public entities." (*Bodde, supra*, 32 Cal.4th at pp. 1239–1240, fn. 7.)

■ "Therefore an action for 'money or damages' against a public entity may not proceed unless a written claim has first been presented to the governmental entity and the claim either has been granted or rejected. (Gov. Code, §§ 905, 945.4.) Unless a specific exception applies, '[a] suit for "money or damages" includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in " 'tort, contract or some other theory.' " ' (*Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 778 [90 Cal.Rptr.2d 386].)" (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 589 [21 Cal.Rptr.3d 451] (*CSEA v. Governing Board*); accord, *TrafficSchoolOnline, supra,* 112 Cal.App.4th at p. 742; *Gatto, supra,* 98 Cal.App.4th at p. 763.)

"Government Code section 905 lists several exceptions to the general rule that public entities must be provided notice of all claims for money or damages." (*CSEA v. Governing Board, supra,* 124 Cal.App.4th at p. 589; accord, 1 Cal. Government Tort Liability Practice, *supra,* §§ 5.22, 5.38, pp. 184, 195–196.) The listed statutory exclusions do not encompass POBRA-related actions. (See § 905.)

"The claim filing requirement has been held applicable to claims arising out of negligence, nuisance, breach of statutory duties, intentional wrongs and contract. (*Baines Pickwick Ltd. v. City of Los Angeles, supra,* 72 Cal.App.4th at pp. 305–307; *Loehr v. Ventura County Community College Dist.[, supra,]* 147 Cal.App.3d 1071, 1079.) 'A suit for "money or damages" includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in " 'tort, contract or some other theory.' " ' (*Hart v. County of Alameda[, supra,]* 76 Cal.App.4th 766, 778, quoting *Baines Pickwick Ltd. v. City of Los Angeles, supra,* 72 Cal.App.4th at p. 307.)" (*Bates v. Franchise Tax Bd.* (2004) 124 Cal.App.4th 367, 382–383 [21 Cal.Rptr.3d 285].)

Authority is split on the issue of whether actions for damages for breach of contract are subject to the claim presentation requirement. (*Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 641 [75 Cal.Rptr.2d 341] (*Alliance Financial*); 1 Cal. Government Tort Liability Practice, *supra,* § 5.9, pp. 171–172.)[8] In rejecting an argument that

---

[8] Recent cases have held presentation of a claim to be a prerequisite to contract damages actions. (*Baines Pickwick Ltd. v. City of Los Angeles, supra,* 72 Cal.App.4th 298; *Alliance Financial, supra,* 64 Cal.App.4th at p. 635; *Loehr v. Ventura County Community College Dist., supra,* 147 Cal.App.3d 1071, 1079 (*Loehr*); see 1 Cal. Government Tort Liability Practice, *supra,* § 5.9, pp. 171–172.) The issue is currently before the California Supreme Court. (*City of Stockton v. Superior Court,* review granted Feb. 1, 2006, S139237.)

the presentation requirements did not apply to contract claims, the appellate court in *Alliance Financial* concluded, after reviewing the legislative history of the statute, "there can be no doubt but that the Legislature intended the claims presentation statutes to apply not only to tort claims, but also to claims for breach of contract and claims for money due under a contract. In short, unless specifically excepted, *any* action for money or damages, whether sounding in tort, contract or some other theory, may not be maintained until a claim has been filed with the relevant public entity and either the public entity acts on it or it is deemed to have been denied by operation of law." (*Alliance Financial*, at p. 642.)

"Exceptions to the filing requirement not specifically enumerated in the Government Claims Act have occasionally been allowed, but only where the claim is based on a statute or statutory scheme that includes a functionally equivalent claim process," such as the FEHA or as in the case of claims under 42 United States Code section 1983, where the supremacy clause of the United States Constitution prohibits states from altering or restricting federally created rights. (*Gatto, supra*, 98 Cal.App.4th at p. 764.) POBRA does not contain such a "functionally equivalent claim process" and the rights conferred thereby are not federal, but state created rights.

D. *Lozada's Failure to Comply with Government Claims Act Bars His POBRA Cause of Action*

Because Lozada failed to allege compliance with the Government Claims Act in his second amended complaint, any cause of action for money or damages is barred unless an exception relieves him of this requirement. Lozada and amicus curiae PORAC present four basic reasons why the POBRA cause of action is not barred by Lozada's failure to file a claim with the City before filing the instant action.

1. They first contend that subjecting actions under POBRA to the presentation requirements of the Government Claims Act violates a clear legislative intent to afford the plaintiff immediate access to the courts to remedy a violation of POBRA. They find support in the language of POBRA providing: "The superior court shall have *initial jurisdiction* over *any* proceeding brought by a public safety officer against any public safety department for alleged violations of [POBRA]." (§ 3309.5, subd. (c), italics added.)

The courts have relied upon this grant of initial jurisdiction to hold that public safety officers are not required to exhaust administrative remedies

before seeking judicial relief for POBRA violations. (*Mounger v. Gates, supra,* 193 Cal.App.3d 1248, 1254–1257 (*Mounger*); *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 251–252 [247 Cal.Rptr. 909] (*Aguilar*); see *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 54 [15 Cal.Rptr.3d 383] (*Alameida*).)

Relying upon this initial jurisdiction provision, *Mounger* held that a public safety officer was not required to exhaust administrative remedies before seeking judicial relief and that the officer could seek attorney fees pursuant to Code of Civil Procedure section 1021.5 for vindication of POBRA rights. (*Mounger, supra,* 193 Cal.App.3d at pp. 1254–1257, 1259; accord, *Alameida, supra,* 120 Cal.App.4th at p. 54; *Aguilar, supra,* 202 Cal.App.3d at pp. 251–252.)

The *Mounger* court reviewed the legislative history of the statute: "There is nothing in section 3309.5 which requires an officer to exhaust his or her administrative remedies if, as in the instant case, that officer also seeks relief through a collective bargaining agreement or other agreed upon procedure. Such a conclusion is contrary to the plain language of the section. Subdivision (b) states: 'The superior court shall have *initial jurisdiction* over any proceeding brought by any public safety officer against any public safety department for alleged violations of this section [italics added by *Mounger* court].' [¶] *The legislative history of section 3309.5 shows it was specifically designed to allow an officer to pursue a remedy immediately in the courts for violation of these rights during the investigation and not be required to wait for judicial review after administrative consideration of those violations.* [Italics added by this court.] Section 3309.5 was introduced as Assembly Bill [No.] 1807 in 1979. A report by the Senate Committee on Judiciary highlighted that the effect of the bill would be to provide peace officers equitable relief by allowing them 'immediate access to superior court to enforce their rights under the Act without having to pursue administrative remedies.' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1807 (1979–1980 Reg. Sess.) as amended May 17, 1979.) The legal affairs secretary advised the Governor's office in an enrolled bill report the purpose of the bill is to allow immediate judicial relief for police officers instead of requiring them to 'exhaust lengthy administrative procedures.' (Legal affairs sec., Enrolled Bill Rep., Assem. Bill No. 1807 [July 25, 1979].) The Office of Employee Relations also advised the Governor's office: 'This legislation, sponsored by PORAC [Peace Officers Research Association of California], would give initial jurisdiction in alleged violations of the Bill of Rights for local peace officers to superior courts; currently, alleged violations must first be heard by the local law enforcement agency before they are taken to court.' (Emp. Rel. Off., Enrolled Bill Rep.,

Assem. Bill No. 1807 [July 23, 1979].) We think it clear the Legislature intended with the passage of section 3309.5 to eliminate the requirement peace officers must exhaust their administrative remedies for alleged violations of the act before seeking judicial relief." (*Mounger, supra*, 193 Cal.App.3d at pp. 1255–1256.)

However, elimination of the requirement that officers must exhaust their administrative remedies before pursuing judicial relief for asserted POBRA violations does not eliminate the statutory claim filing requirements under the Government Claims Act. Appellant and amicus curiae PORAC argue that the "initial jurisdiction" language of POBRA has the same effect upon the statutory claim filing requirements of the Government Claims Act as it does upon the judicially created doctrine of exhaustion of administrative remedies—eliminating both. We disagree.

The origin and purposes of the government claim filing requirements and the administrative remedies exhaustion doctrine differ, and elimination of the exhaustion requirement does not release a litigant from the need to comply with Government Claims Act requirements. (*Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 697–698 [108 Cal.Rptr. 392] (*Bozaich*).)

Affirming the trial court's striking of a complaint in a purported class action, the appellate court in *Bozaich, supra*, 32 Cal.App.3d 688, rejected the same "straw man" argument raised here, in which the plaintiffs "equate the claim-filing requirements of division 3.6 [the Government Claims Act] with an administrative remedy and then assume that the state's only complaint is that they did not pursue that remedy." (*Id.* at pp. 697–698.) The *Bozaich* plaintiffs argued that because class actions constituted an exception to the exhaustion of administrative remedies doctrine, the claim filing requirements had no application. The appellate court reasoned: "The doctrine of exhaustion of administrative remedies evolved for the benefit of the courts, not for the benefit of litigants, the state or its political subdivisions. It rests 'on considerations of comity and convenience,' and its basic purpose is to secure a 'preliminary administrative sifting process' [citation] to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief. [Citation.] The claim-filing requirements of the Government Code are directly related to the doctrine of governmental immunity and exist for the benefit of the state, not the judicial system; they were adopted by the Legislature in the exercise of its legislative prerogative to impose conditions as a prerequisite to the commencement of any action against the public entity. [Citation.] The

doctrine of exhaustion of administrative remedies has no relationship whatever to division 3.6 of the Government Code, and it follows that any exception to that doctrine is not controlling here." (*Id.* at p. 698.)

■ The same reasoning applies here. The vesting of "initial jurisdiction" in the superior court relieves the peace officer from the requirement that he or she exhaust administrative remedies; it does not relieve the officer from the requirement of presenting a claim in conformity with the Government Claims Act where the officer seeks money or damages as a remedy.

Amicus curiae PORAC attempts to distinguish *Bozaich, supra,* 32 Cal.App.3d 688, on the grounds that the situation before us "does not deal with a judicially-created exception to the exhaustion defense. Instead, we are faced with a clear legislative mandate to provide immediate relief to public safety officers whose unique statutory rights have been violated." In apparently characterizing the class action as a "judicially-created exception to the exhaustion defense," amicus curiae mischaracterizes the reasoning of *Bozaich* and ignores that court's recognition that although "[t]he right of a plaintiff to file a class action on behalf of himself and others originates from equitable concepts, . . . *in this state the right is found in section 382 of the Code of Civil Procedure.*" (*Id.* at p. 697, italics added.) Thus, the right to bring a class action is a statutory right. The "judicially created doctrine" discussed in *Bozaich* was the doctrine of exhaustion of administrative remedies—not the class action exception to the exhaustion doctrine. The *Bozaich* court cited the "cardinal rule that specific statutory regulations [the claim filing requirements of the Government Claims Act] control over a general statute [the class action statute], and this is particularly true where, as here, the specific regulations are mandatory. [Citations.]" (*Id.* at p. 697.) The important point of *Bozaich* for purposes of our analysis is that the doctrine of exhaustion of administrative remedies is unrelated to the claim presentation provisions of the Government Claims Act and that exceptions to the former do not relieve a plaintiff from complying with the latter.

Moreover, unlike the requirement that administrative remedies be exhausted before suit, under the claim filing requirements of the Government Claims Act there are no administrative hearing procedures involving the exercise of administrative expertise and the creation of a reviewable hearing record. A claim filed under the act simply provides *notice* to the public entity of the existence and specific nature of the claim, facilitating " ' "early investigation of disputes and settlement without trial if appropriate, as well as to enable the public entity to engage in fiscal planning for potential liabilities

and to avoid similar liabilities in the future." ' [Citation.]" (*Gatto, supra*, 98 Cal.App.4th at p. 763.)

■ The legislative history of POBRA reflects the Legislature's concern that public safety officers be able to proceed to court to remedy violations of their procedural rights during investigations and that they not be required *"to 'exhaust lengthy administrative procedures.'"* (*Mounger, supra*, 193 Cal.App.3d at p. 1256, quoting Legal Affairs Sect., Enrolled Bill Rep., Assem. Bill No. 1807 (1979–1980 Reg. Sess.) July 25, 1979, italics added.) There is no indication that the Legislature was similarly concerned in 2002 when amending the statute to add the remedies of a civil penalty and actual damages in case of malice, that an officer making a claim against the public entity for "money or damages" would be burdened by the requirement that the officer first present a claim to the public entity that the entity must act upon within 45 days of its presentation (§ 912.4) or that the Legislature was abandoning, sub silentio, application of the Government Claims Act to such actions. Indeed, until POBRA's amendment in 2002, only "injunctive and other extraordinary relief" were provided, so the Legislature would have had little reason to consider the claim presentation requirements of the Government Claims Act before that amendment.

■ The Legislature never indicated an intent to exempt POBRA actions from the Government Claims Act filing requirements. To the contrary. Although the legislative history of the 2002 amendment to section 3309.5 that added civil penalties and actual damages to the relief available under POBRA does not refer specifically to the claim filing requirements, the Legislature did anticipate that the addition of public entity liability for its employees' torts under the amendment would invoke the Government Claims Act. The bill analysis reports of the Senate Committee on Public Safety and the Judiciary Committee recognized the Government Claims Act provision regarding indemnification of public employees, and the POBRA amendment's potential for broadening the universe of potential violators for which a public employer could be held liable beyond that contemplated by the indemnification section of the Government Claims Act.

"The inclusion of 'agents' and 'assigns' however broadens the universe of potential violators of [POBRA] for which a public safety employer could be liable for damages beyond that contemplated by Section 825 (the indemnification statute under the Government Tort Claims Act). Assuming these 'agents' and 'assigns' are independent contractors, for example, or other local agencies charged with independent investigation of the injured officer's

alleged misconduct, any liability they may have under the bill would be payable by the public safety department . . . . [¶] While indemnification of public employees is a recognized principle under the Government Tort Claims Act, that of independent contractors are not, as those terms are usually negotiated in a contract." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1516 (2001–2002 Reg. Sess.) as amended Apr. 29, 2002, pp. 14–15; see Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1516 (2001–2002 Reg. Sess.) as amended Apr. 18, 2002, pp. 9–10.)

The amendment to section 3309.5 of POBRA, as enacted, addressed this concern by explicitly allowing public safety departments to include in their contracts with contractors "hold harmless" provisions protecting the departments from liability for the actions of their contractors. (§ 3309.5, subd. (e).) Consequently, the Legislature recognized that the indemnity provisions of the Government Claims Act would apply to the new amendment, and so crafted the amendment to section 3309.5 with the applicability of the Government Claims Act in mind. The failure to carve out an exception to the claim filing requirements of the Government Claims Act indicates the requirements operate as usual where a claim for money or damages is made under POBRA.

 Both *Mounger, supra,* 193 Cal.App.3d at pages 1256–1257, and *Alameida, supra,* 120 Cal.App.4th at page 54, recognized that the officer could pursue *both* judicial and administrative remedies for POBRA violations simultaneously and that the grant of *initial* jurisdiction in section 3309.5 does not vest the courts with *exclusive* jurisdiction over an officer's POBRA claims. POBRA "appears to afford protections to peace officers even before any punitive action is taken by the employer. . . . We see nothing to preclude a peace officer from bringing a court proceeding to assert violations of [POBRA] before being served with a notice of adverse action. Thus, the trial court has 'initial' jurisdiction without requiring the employee to wait for punitive action to be taken." (*Alameida,* at p. 54, fn. omitted.) "Once punitive action is taken, the employee can assert violation of [POBRA] as a defense to discipline in the administrative proceedings, or can seek an adjudication in court. Nothing in the statute suggests otherwise. The word 'initial' in section 3309.5 simply deprives the employer of defeating court action by arguing the employee has failed to exhaust administrative remedies." (*Ibid.*)

"*Mounger* indicated the import of 'initial' in section 3309.5 is to remove the defense of failure to exhaust administrative remedies in the event the employee elects to go to court with his claim of [a POBRA] violation. [Citation.]" (*Alameida,* 120 Cal.App.4th at p. 54, citing *Mounger, supra,* 193 Cal.App.3d at pp. 1254–1256.) " 'Nothing in section 3309.5 states an officer must elect between seeking administrative relief for a departmental disciplinary action and seeking judicial relief for alleged procedural violations. . . .

[S]ection 3309.5 guarantees immediate judicial attention to alleged violations of [POBRA]. We hold officers do not waive their statutory rights under section 3309.5 by choosing to proceed contemporaneously with an administrative appeal of the discipline imposed against them.' ([*Mounger*,] at p. 1257.)" (*Alameida*, at p. 55.)

 Lozada argues that *Alameida*'s recognition of the officer's right to proceed to court even before punitive action is taken by the employer (*Alameida, supra*, 120 Cal.App.4th at p. 54), supports his argument that he is not required to delay his claim to comply with the Government Claims Act once punitive action is taken. We disagree. A public safety officer has the right to seek judicial relief for alleged procedural violations of POBRA occurring before imposition of discipline or any punitive action is taken. Such judicial relief will usually take the form of a petition for writ of mandamus or an action for injunctive or declaratory relief. In such circumstances, because the officer is not usually seeking money or damages at that point, the claim presentation requirements of the Government Claims Act will not apply. However, where the public safety officer's action also seeks "money or damages" as the primary relief, we see nothing in the language of the statute or the legislative history inconsistent with a requirement that the public safety officer comply with the claim presentation requirements of the Government Claims Act before seeking those money damages.[9]

---

[9] City also points out that at least one court has noted that POBRA contains no definition of the term "initial jurisdiction" and that the court could not determine whether "the Legislature intended this term to mean the same thing as 'original jurisdiction' or something else." (*Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 683–684, fn. 6 [172 Cal.Rptr. 844] (*Doyle*).) The appellate court held the police chief who was ultimately removed from office was not entitled to an administrative appeal before a decision to discipline had been reached. (*Id.* at pp. 679–680.) The court held that POBRA allowed the officer to challenge the investigative procedures directly in superior court and to obtain extraordinary relief to remedy the violation or prevent future like violations. (117 Cal.App.3d at p. 680.) The appellate court also held that the trial court had properly granted summary judgment on the ground the chief had failed to exhaust his administrative remedy by appearing at his administrative appeal to the city council. (*Id.* at pp. 682–683.)

Ruling before the 1998 unification of the superior and municipal courts (with the superior courts assuming jurisdiction over matters formerly designated as superior court and municipal court actions) (see *Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274 [28 Cal.Rptr.3d 474]), the Court of Appeal in *Doyle, supra*, 117 Cal.App.3d 673, assumed "that 'initial jurisdiction' means that the superior court is the appropriate trial court forum to litigate rights under section 3300 et seq. rather than justice or municipal courts." (*Id.* at pp. 683–684, fn. 6.) The Legislature has done nothing since *Doyle* to change the meaning of the term "initial jurisdiction" as understood by *Doyle,* despite having amended numerous other statutes to accommodate or account for changes following trial court unification and the subsequent amendment of section 3309.5 itself. (Amended by Stats. 2002, ch. 1156, § 1; Stats. 2003, ch. 62, § 103; Stats. 2003, ch. 876, § 4; Stats. 2005, ch. 22, § 70.)

2. Lozada further contends that his POBRA claims were not "for money or damages" within the meaning of section 905, arguing that the essential nature of POBRA is equitable and nonpecuniary and that the civil penalty, actual damages and attorney fees that may be sought under POBRA are specifically enumerated sanctions to be imposed by the court under its equitable powers where malice is found.[10]

■ At the outset, we recognize that attorney fees authorized by section 3309.5, subdivision (e), are not subject to the claim filing requirement. City acknowledges that the recovery of attorney fees such as those sought here are not a separate item of monetary relief or damages to which the Government Claims Act applies. When authorized by statute, awards of attorney fees are defined as costs, not damages. (Code Civ. Proc., § 1033.5, subd. (a)(10)(B); *Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1308 [58 Cal.Rptr.2d 303].) Consequently, the claim for attorney fees cuts neither for nor against application of the claim filing requirement as to the action as a whole.

Lozada argues the 2002 amendment to POBRA was a recognition of the "rule" enunciated in *People ex rel. Van de Kamp v. American Art Enterprises, Inc.* (1983) 33 Cal.3d 328, 333 [188 Cal.Rptr. 740, 656 P.2d 1170] (*Van de Kamp*), that the superior court should not fashion equitable remedies beyond those expressed in statute. In *Van de Kamp,* the Supreme Court held that the Red Light Abatement Law (Pen. Code, § 11225 et seq.) did not

Despite the fact that it has never been overturned or criticized, it is questionable whether this portion of *Doyle* remains good law as it was rendered before cases holding that the grant of "initial jurisdiction" relieved public safety officers from the administrative exhaustion requirements.

[10] In order to make this argument that the monetary relief sought by Lozada did not constitute "money or damages" under the Government Claims Act, amicus curiae PORAC and Lozada attempt to put some distance between their argument here and the claims and remedies Lozada sought in his second amended complaint below. PORAC states that "Lozada has clarified in his reply brief that he is only claiming 'economic loss' damages, not general damages such as emotional distress or pain and suffering, if he meets the pre-conditions set forth in [section 3309.5] subsection (e)."

On appeal, Lozada appears to concede that certain of the damages he sought below were not in fact available under POBRA. Contrary to his position in the trial court, where he contended he had the right to a jury trial, Lozada now claims that he had no such right in connection with his POBRA claims, and argues that, therefore, general damages are not available as a remedy. He also asserts that POBRA does not appear to allow emotional distress damages or "general damages" as differentiated from economic damages and that "[the] public entity would be entitled to move to strike those improper claims (which Respondents herein never did)." He also recognizes that punitive damages are not available against a public entity pursuant to section 818.

Even if Lozada now concedes that he could recover only economic loss damages as actual damages under POBRA, the fact remains that Lozada's second amended complaint sought damages for economic loss, emotional and physical injury and other general damages "according to proof" in addition to the civil penalty. There is no doubt that such claims sought money and damages.

authorize the imposition of a fine or monetary damage award as an alternative to abatement, closure of the premises, or removal and sale of property. The in rem remedies provided by the statute for abatement of a nuisance did not authorize the court to award money damages personally against the property owners to punish for past acts where the particular nuisance had been abated. (33 Cal.3d at p. 333.) Consequently, Lozada speculates, the Legislature intended section 3309.5, subdivision (e), to give express powers to the court sitting in equity to provide a civil penalty and actual damages as part of its equitable relief.

*Van De Kamp, supra,* 33 Cal.3d 328, does not advance Lozada's argument. Nowhere does the legislative history of the 2002 amendment to POBRA section 3309.5, subdivision (e), provided by the parties mention *Van De Kamp,* a case that was decided nearly 20 years before the POBRA amendment at issue here. Rather, the legislative history indicates the amendment was a response to an unpublished case in which the court held that the public safety officer was not entitled to damages despite conduct which could be characterized as malicious by the public entity employer. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1516 (2001–2002 Reg. Sess.) as amended Apr. 29, 2002, pp. 10–12; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1516 (2001–2002 Reg. Sess.) as amended Apr. 18, 2002, pp. 3–6.) It is not disputed that the amendment to section 3309.5 was intended to expand, in a limited way, the remedies available to public safety officers suffering violations of their POBRA rights. Clearly, the Legislature intended to expressly authorize a civil penalty and actual damages, as well as attorney fees for malicious violations of the statute. That does not answer the question whether the Legislature intended these damages to be exempt from the claim filing requirements of the Government Claims Act.

Lozada contends that the civil penalty is not "damages" because it is not compensatory in nature, but rather operates to deter violations of POBRA by providing economic incentives to challenge wrongful conduct.

 The civil penalty provided by section 3309.5 comes within well-established understandings of the term "damages."

Civil Code section 3281 provides: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." "As our cases have pointed out, this provision is intended to represent the plain and ordinary meaning of the word 'damages.' [Citations.] Other lay and legal definitions are similar. . . . Whatever their semantic differences, the statutory and dictionary definitions of 'damages' share several basic concepts. Each requires there to be 'compensation,' in 'money,' 'recovered' by a party for

**1162**

'loss' or 'detriment' it has suffered through the acts of another." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 825–826 [274 Cal.Rptr. 820, 799 P.2d 1253], fns. omitted.) The Supreme Court has also noted that the term "compensation" as used in Civil Code section 3281 in its generic meaning "encompass[es] any remunerative payment made to an aggrieved party. In addition to 'compensatory damages,' . . . the term 'damages' generically includes restitutive and punitive measures. [Citation.]" (*AIU Ins. Co.*, at p. 826, fn. 11.)

The civil penalty available under section 3309.5 is not merely a regulatory remedy. Unlike statutory penalties imposed under a comprehensive regulatory scheme, the purpose of the civil penalty here was not only to punish the wrongdoer, but also to compensate for the injury sustained by an aggrieved plaintiff. (*Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 270–276 [20 Cal.Rptr.3d 92]; *id.* at p. 271 [in addition to advancing Legislature's intent to encourage and aid private parties to help enforce civil rights laws, civil penalty under the Unruh Civil Rights Act "also helps to ensure that plaintiffs receive ample compensation, irrespective of their *actual* damages"]; *Burden v. County of Santa Clara* (2000) 81 Cal.App.4th 244, 252–253 [96 Cal.Rptr.2d 587] [Lab. Code, § 970 et seq. creates a statutory tort cause of action, although the statute provides for double damages for a violation].)

Moreover, insofar as the civil penalty provides compensation beyond the actual injury suffered by the injured public safety officer where the public entity employer acted with the requisite malicious intent, the civil penalty, if not clearly compensation for "damages," is a claim for "money" within sections 905 and 945.4 of the Government Claims Act. The claim presentation requirement of the Government Claims Act does not apply solely to claims for compensatory "damages," but to "all claims for money" (§ 905), as well.

Lozada and PORAC also contend that the "actual damages" provided by the statute are not in fact "damages" subject to the Government Claims Act. They reach this conclusion by advocating a very narrow definition of the term "actual damages" to mean only "damages capable of 'exact measurement and proof' or economic damages." So limited, they contend that the actual damages to which Lozada was entitled under section 3309.5 included his claim for backpay (and presumably his other pay and benefits claims). Lozada and PORAC characterize these economic damages as neither money nor damages, but "equitable restitution remedy, as well as an economic incentive to aggrieved peace officers to challenge wrongful conduct."

However, Lozada also recognizes that the term "actual damages" is susceptible of different meanings and may be interpreted broadly as compensatory damages (which would include, among other things, emotional distress damages) or more narrowly to mean damages capable of "exact measurement and proof" such as economic damages. In arguing that the more narrow interpretation is appropriate here, Lozada relies upon *Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686, 690 [276 Cal.Rptr. 640]. In *Balmoral,* another division of this district held that actual damages provided in a local rent control ordinance did not include mental distress where actual damages could be trebled pursuant to statute, resulting in constitutionally excessive penalties. The court urged the "lay" understanding of the term, reasoning that "[a]n interpretation of 'actual damages' as referring narrowly to out-of-pocket expenses is most consistent with the legislative purpose underlying the treble damage provision of the section." (*Id.* at p. 690.) The court was clearly concerned with the due process implications of the treble damages provision of the ordinance. At the same time, the *Balmoral* court also recognized that the term " 'actual damages' is ordinarily synonymous with compensatory damages which may include damages for mental suffering." (*Id.* at p. 689.)

In interpreting the ordinance narrowly to exclude mental distress damages, the *Balmoral* court disagreed with our opinion in *Beeman v. Burling* (1990) 216 Cal.App.3d 1586 [265 Cal.Rptr. 719], in which we held that the failure of a tenant to include damages for mental anguish among actual and special damages listed in his complaint for wrongful eviction did not preclude trebling of the damages awarded for pain and suffering under the rent control ordinance. The ordinance provided for trebling of actual damages, which we held consisted of both general and special damages. In so concluding, we looked to the standard definition of "actual damages." "First, 'actual damages consist of both general and special damages.' (Black's Law Dict. (5th ed. 1979).)" (*Beeman,* at p. 1601, fn. omitted.) We noted that, "Actual damages are further defined as '[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to "nominal" damages, and on the other to "exemplary" or "punitive" damages.' (Black's Law Dict., *supra,* at p. 352.)" (*Beeman,* at p. 1601, fn. 9.)

We are not persuaded that substantial civil penalties and actual damages do not constitute "money or damages" within the meaning of the Government Claims Act. While there appears to be a split of authority over whether money damages that may be "incidental" to a claim for equitable relief are subject to the claim filing requirement of the Government Claims Act, we are aware of no case that holds that civil penalties of the type sought here ($25,000 per incident) and actual damages that are the primary relief sought and not merely "incidental" to injunctive or other extraordinary relief, do not

constitute a claim for "money or damages" in the first instance. (Compare *CSEA v. Governing Board, supra,* 124 Cal.App.4th 574, 592–593, *TrafficSchoolOnline, supra,* 112 Cal.App.4th 736, 742 [both rejecting view that monetary relief, even if "incidental" to injunctive or declaratory relief, is not an action for money or damages under §§ 945.4, 905] with *Snipes v. City of Bakersfield* (1983) 145 Cal.App.3d 861 [193 Cal.Rptr. 760, 870] (*Snipes*); *Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 475 [247 Cal.Rptr. 790] (*Eureka Teacher's Assn.*); *Harris v. State Personnel Bd.* (1985) 170 Cal.App.3d 639, 643 [216 Cal.Rptr. 274], disapproved on other grounds in *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300]; *Indep. Housing Services v. Fillmore Ctr.* (N.D.Cal. 1993) 840 F.Supp. 1328, 1358 (*Independent Housing Services*) [agreeing that applicability of claim filing requirement turns on whether the damages sought are "incidental" to the equitable relief sought].)[11]

3. In a slight variation of this argument, Lozada and amicus curiae PORAC argue that in POBRA claims, where the relief sought includes a request for injunctive or extraordinary relief, additional relief such as backpay, civil penalties or actual damages is necessarily additional and "incidental" to the primary extraordinary relief sought.

It is true that some courts have awarded backpay and benefits as incidental to the injunctive and declaratory relief of employment or reinstatement sought

---

[11] *Eureka Teacher's Assn., supra,* 202 Cal.App.3d 469, holds that the plaintiff's claim for backpay and fringe benefits was improperly denied, since it was incidental to the mandamus action for reemployment and thus was not subject to the Government Claims Act claim presentation requirements. " 'Those actions which seek injunctive or declaratory relief and certain actions in mandamus, . . . and where money is an incident thereto, are exempted from the statute.' (*Harris v. State Personnel Bd.*[, *supra,*] 170 Cal.App.3d 639, 643.) The court in *Harris* held that a state employee's mandamus action for reinstatement and backpay was not a claim for money or damages subject to the Tort Claims Act: 'Back salary was clearly relief incidental to appellant's request for an order of reinstatement to his employment. His mandamus action, therefore, is not subject to demurrer for failure to comply with the Tort Claims Act.' (*Ibid.*; see Gov. Code § 905.2 [claims for money or damages against state].) [¶] Similarly, the court in *Snipes*[, *supra,*] 145 Cal.App.3d 861, 870, held that an action for injunctive relief and other remedies as redress *Snipes*[, *supra,*] 145 Cal.App.3d 861, 870, held that an action for injunctive relief and other remedies as redress for employment discrimination was not subject to the claim presentation requirements of the Tort Claims Act merely because backpay and punitive damages were sought. '[A]n action for specific relief does not lose its exempt status solely because incidental money damages are sought. . . . Back pay clearly is specific monetary relief *incidental* to the requested orders that appellant be hired and that respondents be enjoined from discriminating against him.' (*Ibid.,* italics in original.)" (*Eureka Teacher's Assn.,* at p. 475.)

This was a second basis for the holding in *Snipes, supra,* 145 Cal.App.3d 861. The first was that FEHA claims were not subject to the claim presentation requirements of the Government Claims Act. (145 Cal.App.3d at pp. 864–869.)

in an action for mandamus or for injunctive relief, and therefore exempt from the claim filing requirements of the Government Claims Act. (E.g., *Eureka Teacher's Assn., supra*, 202 Cal.App.3d 469, 475 [backpay and fringe benefits were incidental to the mandamus action for reemployment and order not to discriminate against plaintiff]; *Harris v. State Personnel Bd., supra*, 170 Cal.App.3d 639, 643 [claim for backpay incidental to claim for reinstatement]; *Snipes, supra*, 145 Cal.App.3d 861, 870 [backpay and other relief, including punitive damages as redress for employment discrimination— "Back pay clearly is specific monetary relief *incidental* to the requested orders that appellant be hired and that respondents be enjoined from discriminating against him"]; *Independent Housing Services, supra*, 840 F.Supp. 1328, 1358 [damages sought were incidental to request for an injunction declaring agency in violation of the handicap access laws and must comply with them in the future].[12]) In these cases it appears that the claim filing exemption was based upon the courts' perception that the monetary relief awarded was incidental to the primary injunctive and/or other extraordinary relief sought.

At least one court has authorized backpay as a form of extraordinary relief for POBRA violations even before the amendment to section 3309.5. In *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 844–845 [218 Cal.Rptr. 704] (*Henneberque*), the court held that backpay constituted extraordinary relief under the statute. The court summarized its reasoning: "First, section 3309.5 instructs courts to use other extraordinary relief to remedy violations of [POBRA]. Second, the term 'other extraordinary relief' includes writs of mandate. And third, a writ of mandate is appropriately used to award backpay." (*Id.* at p. 844.) Similarly, where appropriate, the claimant is entitled to attorney fees under Code of Civil Procedure section 1021.5. (*Henneberque*, at pp. 845–847.)

The Government Claims Act was not at issue in *Henneberque*, as the claim arose under a preamendment version of the statute authorizing only injunctive or other extraordinary relief. Moreover, it is apparent that the court in *Henneberque* concluded that backpay was proper as relief incidental to the main writ relief of directing the city to provide the officer with an administrative appeal on his punitive demotion. (But see *Williams v. City of Los Angeles* (1990) 220 Cal.App.3d 1212, 1217–1218 [269 Cal.Rptr. 869] [trial court not required to award additional backpay as extraordinary relief under POBRA]; *Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375, 383 [34 Cal.Rptr.2d 431] [plaintiff was required to comply with Government Claims

---

[12] *Independent Housing Services* recognized that the injunctive and declaratory relief sought was of "great weight" and that the plaintiffs' "potential damages [were] small and particularly inconsequential compared to the effect of the declarations" sought by the plaintiffs. (*Independent Housing Services, supra*, 840 F.Supp. at p. 1358; see *Gatto, supra*, 98 Cal.App.4th at p. 761.)

Act before filing writ of mandate petition against the county and the sheriff seeking retroactive salary and benefits].)

On the other hand, *TrafficSchoolOnline, supra*, 112 Cal.App.4th 736, 741 and *CSEA v. Governing Board, supra*, 124 Cal.App.4th 574, 592, both "criticized the view that monetary relief is not an action for money or damages under Government Code sections 945.4 and 905 if it is incidental to injunctive or declaratory relief. The [*TrafficSchoolOnline*] court explained that '[s]ince an incidental damage claim seeks monetary relief, the express language of Government Code section 945.4 requires presentation of a claim as a precondition to the filing of suit. The language in Government Code section 945.4 contains no exception for "incidental damages." ' (*TrafficSchoolOnline, supra*, 112 Cal.App.4th at p. 741.)" (*CSEA v. Governing Board*, at p. 592.) The *TrafficSchoolOnline* court viewed the question as largely an issue of statutory construction of the Government Claims Act. (*TrafficSchoolOnline*, at pp. 739–741.)

To the extent that *Henneberque, supra*, 172 Cal.App.3d 837, holds that backpay constitutes extraordinary relief under POBRA, it may be that a particular claim for backpay, attached to a writ petition seeking primarily reinstatement or similar injunctive and declaratory relief would not be subject to the Government Claims Act. But we need not make that determination in this case as we believe our decision in *Gatto, supra*, 98 Cal.App.4th 744, fully supports the trial court's determination that the monetary relief sought by Lozada was not "incidental" to the injunctive and extraordinary relief he sought, but was the primary relief sought in the action.

In *Gatto, supra*, 98 Cal.App.4th 744, we held that the Government Claims Act applied to alleged violations under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) where the money damages sought were not incidental or subsidiary to the plaintiff's interest in injunctive relief, despite the similarity of Unruh Civil Rights Act claims to claims for violation of the FEHA and federal civil rights claims under 42 United States Code section 1983, both of which are exempt from requirements of the Government Claims Act.[13] (*Gatto*, at pp. 760–765.)

---

[13] "[C]laims under 42 United States Code section 1983 are exempt . . . because the supremacy clause of the United States Constitution does not permit a state law to alter or restrict federally created rights." (*Gatto, supra*, 98 Cal.App.4th at p. 764.) FEHA claims are exempt because " '[t]he procedural guidelines and the time framework provided in the FEHA are special rules for this particular type of claim which control over the general rules governing claims against governmental entities. The FEHA not only creates a statutory cause of action, but sets out a comprehensive scheme for administrative enforcement, emphasizing conciliation, persuasion, and voluntary compliance, and containing specific limitations periods.' " (*Gatto*, at p. 764.) As we have observed heretofore, POBRA does not contain such a "functionally equivalent claim process." (98 Cal.App.4th at p. 764.)

As we recognized in *Gatto, supra,* 98 Cal.App.4th 744: "*Loehr*[, *supra,* 147 Cal.App.3d 1071, 1081] and other state cases thus support the proposition that 'an action for specific relief does not lose its exempt status solely because incidental money damages are sought.' (*Snipes*[, *supra,*] 145 Cal.App.3d 861, 870; accord, *Eureka Teacher's Assn.*[, *supra,*] 202 Cal.App.3d 469, 475 [request for backpay and fringe benefits incidental to mandamus action for reemployment and therefore not subject to Government Claims Act]; *Harris v. State Personnel Bd.*[, *supra,*] 170 Cal.App.3d 639, 643, disapproved on other grounds in *Coleman v. Dept. of Personnel Administration*[, *supra,*] 52 Cal.3d 1102, 1122, fn. 8 [mandamus action for reinstatement and backpay not primarily for damages and therefore no claim needed to be filed].)" (*Gatto,* at p. 762.) At the same time we held "[t]he claims filing requirement remains applicable to actions in which money damages are not incidental or ancillary to any specific relief that is also sought, but the *primary purpose* of the action. (1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2001) Overview of Claim Procedures, § 5.53, p. 191.)" (*Gatto,* at p. 762, italics added.)

Lozada and amicus curiae PORAC seek to distinguish *Gatto, supra,* 98 Cal.App.4th 744, on the ground that in *Gatto,* actual damages were available under the Unruh Civil Rights Act and applicable related provisions (Civ. Code, §§ 52, 52.1) whether or not injunctive or other equitable relief were warranted. (*Gatto,* at p. 760.) They reason that the civil penalties, backpay, front pay, and actual damages sought by Lozada under POBRA are *necessarily* incidental to the primary extraordinary relief sought, because under section 3309.5, the civil penalty is recoverable as an "additional" remedy as opposed to an "alternative" remedy and is not available to a plaintiff unless and until the superior court first renders equitable relief for a violation of POBRA and finds the violation "malicious" and done with intent to injure. We are not persuaded by this proffered distinction.

In *Gatto,* the plaintiff, like Lozada, *did* seek declaratory and injunctive relief in addition to monetary relief under provisions of the Unruh Civil Rights Act (Civ. Code, §§ 51, 52.1, subd. (b)) (*Gatto, supra,* 98 Cal.App.4th at pp. 749, 762–763), following his ejection from the Sonoma County Fair for wearing insignia of the Hell's Angels Motorcycle Club (*id.* at p. 749). In finding the Government Claims Act applied to his Unruh Civil Rights action and, therefore, the statute of limitations was extended for six months, we recognized that "many or perhaps even most actions under these statutes [Civ. Code §§ 51, 52.1] seek only injunctive or declaratory relief, and not damages, but that provides no reason to exempt such actions from claim [filing] requirements where the plaintiff *does* seek to recover damages from a public entity *and that is his or her chief purpose.*" (*Id.* at p. 760.)

In determining whether the monetary relief sought by Gatto was incidental to the extraordinary relief he sought, we were guided by *Loehr, supra,* 147 Cal.App.3d 1071. In that case, the plaintiff sought both reinstatement to his position with a community college district and damages for his alleged wrongful termination. (*Gatto, supra,* 98 Cal.App.4th at p. 761.) On demurrer for his failure to comply with the claim filing requirements of the Government Claims Act, the plaintiff relied upon the general rule that the claim statutes do not apply to nonpecuniary actions, such as those seeking injunctive, specific, or declaratory relief. The appellate court rejected the plaintiff's argument that because two of his six causes of action sought such relief, he was not required to comply with the claim filing requirements of the act. "[T]he Court of Appeal pointed out that the rule has no application 'where a petition for extraordinary relief is merely incidental or ancillary to a prayer for damages.' ([*Loehr,*] at p. 1081.) As the court emphasized, the plaintiff's first three causes of action sought monetary damages for emotional and mental distress, pain and suffering, humiliation, and damage to reputation, and these actions 'obviously fall within the terms of the Government Claims Act.' (*Ibid.*)" (*Gatto, supra,* 98 Cal.App.4th at p. 762.)

Analyzing the relief sought by Gatto in a similar manner, we concluded that the trial court had properly found Gatto's "request for damages was not merely incidental to a transcendent interest in injunctive relief but was the primary relief sought." (*Gatto, supra,* 98 Cal.App.4th at p. 762.) In so doing, we looked to what rights Gatto asserted he was vindicating, and found it relevant that he had "sued in his own behalf and never expressed interest in vindicating rights of anyone other than himself" (*id.* at p. 762) and to the fact that he "expressed his personal pecuniary interest" by filing a claim with the county, in which he informed them that the damages he had suffered exceeded the amount permitted by the Government Code and that he would seek attorney fees and punitive damages in a combined amount of $35,000. The record did not suggest that Gatto considered his interest in money damages to be subsidiary to his interest in injunctive relief. Looking to the caption and the prayer for relief in the complaint, we observed that damages were the first thing mentioned in the title and the prayer for relief. Moreover, putting aside the attorney fees and costs he received, $1,000 in damages was the *only* relief he obtained. (*Id.* at pp. 762–763.)

In this case, we are convinced that Lozada's claims for damages and civil penalties were not incidental to his claims for injunctive and declaratory relief, but were the primary focus of his action. Because the court granted the motion for summary adjudication, we cannot know for sure what damages, if any, Lozada would have received for the asserted violations of his POBRA

rights. However, the record does not indicate that he had any "transcendent interest" in injunctive or declaratory relief, beyond his ability to obtain civil penalties and actual damages if the court found the department to have acted with "malice." Lozada was never suspended and so did not seek reinstatement. Nor did he specifically seek reassignment or transfer through a mandamus action or in his prayers for injunctive and declaratory relief, although he complained of being transferred to a nonfield contact assignment and of being denied transfers that would have amounted to promotions. As in *Gatto, supra*, 98 Cal.App.4th at pages 762–763, damages are the first thing mentioned in the title and the prayer for relief of his first and second amended complaints.

In all, Lozada sought civil penalties of $25,000 for each of 13 alleged violations of his POBRA rights, for a total of $325,000 in possible civil penalties. In his first cause of action for violation of his POBRA rights, following the itemization of the asserted violations in his second amended complaint, Lozada alleged:

"116. As a direct and proximate result of the above, plaintiff has suffered actual damages, including without limitation the loss of wages/salary (including lost overtime and lost vacation time), benefits, and additional amounts of money plaintiff would have received had he been assigned to the Safe Neighborhoods Task Force. As a result of defendant's [SFPD's] violations above, plaintiff has suffered damages in an amount according to proof.

"117. As a further direct and proximate result of defendant's violations, as alleged above, plaintiff has been harmed in that plaintiff has suffered humiliation, mental anguish, and emotional and physical distress. As a result, plaintiff has suffered further damages in an amount according to proof.

"118. Each and every violation of defendant was done with malice and with the intent to injure plaintiff, thereby entitling plaintiff to be awarded twenty-five thousand dollars ($25,000) for 'each and every violation,' pursuant to Government Code section 3309.5(d).

"119. In doing the acts herein alleged, defendant acted with oppression, fraud, and malice, and plaintiff is entitled to exemplary damages in an amount according to proof."

In a third cause of action for declaratory relief, Lozada sought a judicial declaration regarding his contentions that defendants had committed numerous violations of POBRA as alleged and declarations relating to his other non-POBRA causes of action. In a fourth cause of action for injunctive relief,

he alleged that, "Unless the conduct of defendants as alleged herein is prevented and restrained, defendants will continue to violate plaintiff's rights under the Peace Officers Rights Act and the Constitution of the United States. Accordingly, plaintiff also seeks a preliminary and permanent injunction to enjoin defendants' unconstitutional and otherwise unlawful conduct."

As we have previously set forth, in the prayer for relief relating to all counts of the POBRA first cause of action, Lozada sought relief as follows: "1. For back pay (including overtime and lost vacation time), front pay, and other monetary relief in an amount according to proof; [¶] 2. For general damages in an amount according to proof; [¶] 3. For a civil penalty of $25,000 for each and every violation of [POBRA]; [¶] 4. For punitive damages in an amount appropriate to punish defendant for its wrongful conduct and set an example for others; and [¶] 5. For prejudgment interest at the maximum legal rate, commencing on the first date of violation." He also sought attorney fees and costs.

In the prayer related to his third cause of action for declaratory relief, Lozada sought "a declaration that SFPD has violated plaintiff's rights under [POBRA]," and for declarations that various orders issued by SFPD on August 1, 2003, and August 8, 2003, were "unconstitutional, unlawful and unenforceable," and for a "declaration respecting the rights and duties of the parties under [POBRA] and the Constitution of the United States pertaining to the facts and circumstances of the facts alleged herein." With respect to his fourth cause of action for injunctive relief, he sought "a preliminary and permanent injunction preventing and restraining defendants from any on-going or further violations of plaintiff's rights under [POBRA] . . . ."

It is clear that in this action, recovery of money and damages (including civil penalties amounting to $325,000 for 13 alleged POBRA violations) was the principal focus of Lozada's complaint and the primary relief sought thereby. Unlike writ proceedings where incidental monetary relief may be awarded in the exercise of the court's power to give extraordinary relief, the aim of Lozada's POBRA cause of action was recovery of money damages. Although they argue that monetary relief and damages are *always* and necessarily incidental to injunctive and other extraordinary relief in *all* POBRA actions, neither Lozada nor amicus curiae PORAC makes the argument that in this case Lozada's specific claims for monetary relief and damages were merely incidental to his claims for declaratory and injunctive relief. Indeed, in his opening brief, Lozada "stipulate[ed]" for the purposes of argument that he prayed for "primarily, money or damages, while [his] claims for declaratory/injunctive relief were merely incidental."

POBRA section 3309.5, subdivision (e), provides for monetary relief "[i]n addition to the extraordinary relief afforded" under the statute. Amici curiae for City point out that in order to recover civil penalties and actual damages under subdivision (e), the plaintiff must prove more than a simple entitlement to injunctive or extraordinary relief. The plaintiff must prove that the public entity "maliciously violated" the statute "with the intent to injure the public safety officer." Because the plaintiff must establish these additional elements to recover money under section 3309.5, amici curiae argue that the public safety officer's demand for penalties and actual damages is separate from and *cannot* be "incidental" to the officer's demand for injunctive or other extraordinary relief. We need not go so far at this time. It is sufficient for resolution of this case that Lozada's monetary claims for civil penalties and actual damages were not incidental to his claims for injunctive and declaratory relief.

4. Finally, Lozada and amicus curiae PORAC argue that subjecting POBRA claims to the claim presentation requirement of the Government Claims Act would frustrate the purpose of POBRA, whereas the policy considerations underlying the Government Claims Act are not affected by allowing a public safety officer immediate access to the courts.

Aware that his own action does not provide a persuasive example of a situation in which application of the claim presentation requirements of the Government Claims Act would frustrate any of the aims of POBRA, Lozada points to *California Correctional Peace Officers, supra,* 82 Cal.App.4th 294, arguing that application of the claim filing requirements to suits in such a case would prevent the superior court from issuing a temporary restraining order within days of a POBRA violation *and* simultaneously meting out civil penalties available under the statute.

In *California Correctional Peace Officers, supra,* 82 Cal.App.4th 294, we addressed the propriety of limits placed on an investigation of alleged criminal misconduct by state prison guards at Corcoran State Prison. (*Id.* at p. 299.) POBRA rights of 20 correctional officers were violated on August 20, 1998, during the investigation. (82 Cal.App.4th at p. 300.) On August 24, 1998, four days after the violations, individual officers and the California Correctional Peace Officers Association filed a complaint in the superior court. The trial court issued a temporary restraining order on September 3, 1998, the complaint was amended on September 9, 1998, and a preliminary injunction issued on September 23, 1998. The trial court modified the injunction on November 10, 1998, setting forth specific procedures for the prison to follow in conducting criminal and administrative investigations. (*Id.* at pp. 300–302.) We held, among other things, that POBRA applied to

the investigations conducted, that there had been violations of POBRA, and that injunctive relief was appropriate under section 3309.5 to the extent it applied to the California Department of Corrections. (82 Cal.App.4th at pp. 299–300.) Lozada contends that if the same violations occurred today, under POBRA, the trial court could grant both immediate injunctive relief and, upon a finding of malice and willful intent to injure, could assess penalties amounting to up to $500,000 ($25,000 for each of the 20 peace officers involved), plus attorney fees. He asserts that application of the Government Claims Act would frustrate the officers' right to receive both types of relief under POBRA.

■ We reject the argument that application of the claim filing requirements of the Government Claims Act will defeat or seriously hinder the goal of allowing immediate access to the courts to officers asserting POBRA violations or that officers will be required to choose between seeking immediate redress of alleged POBRA violations and seeking the civil penalties and damages allowed by that statute.

There is no reason that the officers in a situation such as that presented by *California Correctional Peace Officers, supra,* 82 Cal.App.4th 294, could not immediately proceed to court seeking injunctive and other extraordinary relief. If the officers determined to seek, in addition to extraordinary relief, the civil penalties or actual damages also provided by the statute for employers acting with malice and intent to injure, no reason appears why a claim could not be filed with the local entity pursuant to the Government Claims Act and the complaint amended to seek money or damages in the event of rejection of the claim by the local entity. Indeed, to enable the court to make a determination whether the public entity employer's violation of POBRA was malicious and done with the intent to injure so as to support the award of the civil penalty or actual damages under section 3309.5, subdivision (e), it is likely that a more extensive proceeding would be required than would be necessary to establish simply that the employer violated the officer's POBRA rights. Such proceedings would be unlikely to conclude in less than the 45 days the public entity employer would have to act upon a claim.

Moreover, nothing would prevent the court in an action for extraordinary relief under POBRA from granting additional monetary relief that was truly "incidental" to appropriate injunctive relief.

This case illustrates that the alleged conflict between POBRA and the Government Claims Act is more illusory than real. Lozada did not seek immediate relief from the superior court *during* the investigation and the alleged violations of his POBRA rights. Instead, he waited until numerous violations of POBRA allegedly occurred over a period of approximately six

months and then sought declaratory and injunctive relief (essentially an order that the City had violated his POBRA rights and an order that it not continue to violate these rights in the future) and significant monetary damages against the City. Lozada contended that in the six months following the January 2003 discharge of his weapon, his POBRA procedural rights were violated 13 separate times, beginning with a March 7, 2003 interrogation and ending with an August 8, 2003 "confidentiality order." Lozada filed his initial complaint on October 29, 2003—more than two months after the last alleged violation and more than seven months after the initial interrogation. He amended his complaint twice, on November 10, 2003, and December 28, 2004.[14] In the circumstances presented here, Lozada cannot reasonably contend that he would have been unduly hampered in vindicating his POBRA rights by the requirement that he comply with the claim filing requirements of the Government Claims Act.

 Amicus curiae PORAC suggests that separating damages from equitable relief in these actions would be unduly unwieldy and confusing. It has failed to demonstrate its point here. Nothing in either the language or legislative history of POBRA indicates that claims for civil penalties and/or actual damages pursuant to section 3309.5, subdivision (e), are exempt from the requisites of the Government Claims Act. The statutes are compatible. The policies underlying POBRA are not significantly impacted by requiring that the officer seeking damages or monetary relief as the *primary purpose* of the action (and not as relief merely incidental to injunctive or other extraordinary relief) to comply with the claim presentation requirements of the Government Claims Act. On the other hand, important policies underlying the Government Claims Act requirements would be completely undermined by allowing public safety officers seeking substantial damages and monetary relief to avoid the claim filing requirements in the absence of clear legislative direction.

 "In this case, we are applying the [Government] Claims Act. In interpreting the [Government] Claims Act, we are mindful that our Supreme Court has noted: ' "[T]he intent of the [act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." [Citation.]' (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624]; accord, [citations].)" (*TrafficSchoolOnLine, supra,* 112 Cal.App.4th 736, 741.)

---

[14] The joint appendix does not contain a copy of the initial complaint, however, we take judicial notice that the initial complaint was filed on or about October 29, 2003. (Evid. Code, §§ 452, 459.)

## Disposition

The judgment is affirmed.

Lambden, J., and Richman, J., concurred.